**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

NEURAL AI, LLC

Petitioner,

v.

TESLA, INC.,

Respondent.

Misc. Case No. 7:26-mc-00318-LS

**NON-PARTY TESLA, INC.'S OPPOSITION TO NEURAL AI, LLC'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA AND CROSS MOTION TO QUASH NEURAL AI, LLC'S SUBPOENAS**

## TABLE OF CONTENTS

I. INTRODUCTION ........ 1
II. FACTUAL BACKGROUND ........ 2
A. NAI's Dilatory Third-Party Campaign and the Sweeping Subpoenas to Tesla ........ 2
B. Tesla's Objections, Meet-and-Confers, Investigation, and Declaration ........ 2
III. ARGUMENT ........ 4
A. Under NAI's Own Theory, Customer Discovery Ends at Identification and As-Provided Use—Information Tesla Already Provided ........ 4
B. Tesla Fully Performed the Only Compromise NAI Actually Negotiated ........ 6
C. The Remaining Requests Are Overbroad, Unduly Burdensome, and Seek Trade Secrets Disproportionate to Any Need ........ 6
D. NAI Served Its Subpoenas Too Late and Filed Its Motion Out of Time ........ 9
E. NAI's Motion Should Have Been Filed in Austin—the Place of Compliance ........ 10
IV. CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Burns v. Bank of America*,
No. 03-cv-1685 (RMB) (JCF), 2007 WL 1589437 (S.D.N.Y. June 4, 2007)............................ 9

*Days Inn Worldwide, Inc. v. Sonia Invs.*,
237 F.R.D. 395 (N.D. Tex. 2006) ........................................................................... 9, 10

*Hoeflein v. Crescent Drilling & Prod., Inc.*,
No. SA 19-CV-01194-FB, 2020 WL 7643122 (W.D. Tex. Dec. 23, 2020) .............................. 4

*Thomas v. IEM, Inc.*,
No. 06-886-B-M2, 2008 WL 695230 (M.D. La. Mar. 12, 2008)............................................... 9

**Rules**

Fed. R. Civ. P., Rule 26 ........................................................................................... 6, 9

Fed. R. Civ. P., Rule 29 ...............................................................................................10

Fed. R. Civ. P., Rule 37 ............................................................................................. 10

Fed. R. Civ. P., Rule 45 ........................................................................................ *passim*

## I. INTRODUCTION

Neural AI, LLC ("NAI") asks this Court to conscript Tesla, Inc. ("Tesla"), a non-party, into proving NAI's infringement case against NVIDIA. Far from typical of customer subpoenas, NAI demands granular Tesla confidential trade secrets, including Tesla-specific: AI infrastructure, source code, system architecture, memory management, data paths, buffer reuse, scheduling, and related 30(b)(6) testimony—across essentially any ***Tesla system*** that touches an NVIDIA GPU. Some document requests and deposition topics even implicate non-NVIDIA GPUs or software. This is facially improper third-party discovery.

Tesla responded exactly as Rule 45 contemplates. It timely served written objections; met and conferred twice within two weeks; explained the basis for its objections; and agreed to investigate NAI's narrowed discovery despite the late hour: (1) identification of the NVIDIA GPUs and software Tesla uses and (2) whether Tesla uses the software as provided. In reliance on NAI's narrowed scope, Tesla conducted a thorough investigation—through its supply chain, IT infrastructure, and engineering departments—and produced a sworn declaration providing precisely the facts NAI requested.

That should have ended the dispute. Instead, one day before the close of fact discovery, NAI rejected Tesla's declaration because Tesla refused to adopt NAI's pre-written admissions reciting claim language and filed this Motion six days after the written discovery deadline. NAI's dissatisfaction with a completed, good-faith compromise is not "non-compliance."

NAI's Motion should be denied. First, under NAI's own indirect infringement theory, only product identification and as-provided use are relevant to its claims—and Tesla already provided both. Second, Tesla complied in good faith and fully performed the compromise reached during the meet-and-confers. Third, the remaining requests and topics are overbroad, unduly burdensome, and seek trade secrets out of proportion to any legitimate need. Fourth, the Motion was belatedly

filed after the written discovery deadline. Finally, it should have been filed in Austin, the place of compliance, not Midland. In the alternative, the Court should modify the subpoenas to cover only the information Tesla already produced and quash the remainder, including any testimony.

## II. FACTUAL BACKGROUND

### A. NAI's Dilatory Third-Party Campaign and the Sweeping Subpoenas to Tesla

NAI began third-party discovery against other NVIDIA customers as early as October 15, 2025.[1] Exs. 22-23.[2] Yet NAI waited until June 25, 2026 to serve Tesla. Mot. 3.

The scope of NAI's subpoenas is sweeping. Its twelve requests for documents ("RFPs") seek confidential information of any Tesla system that uses an NVIDIA GPU, including: all software, frameworks, source code, configurations, and custom code used on NVIDIA GPUs (RFPs 1, 5); whether and how Tesla uses or modifies NVDIA software, including details of ***Tesla-written software*** (RFPs 4-5); ***Tesla's*** software design, architecture, and data/control/execution flow (RFP 5); neural-network structure (RFP 6); pointer/buffer reuse (RFP 7); internal input/output data paths and memory management (RFPs 8-12); and scheduling/queueing/control of GPU computations, including through "custom software" (RFP 11). Ex. 5 at 16-18. NAI's five deposition topics ("Topics") mirror that scope. Ex. 5 at 27. Several RFPs and Topics even implicate non-NVIDA GPUs or software. *See, e.g.*, RFPs 1, 4-12; Topics 4-5.

### B. Tesla's Objections, Meet-and-Confers, Investigation, and Declaration

After an agreed extension, Tesla served its objections and responses on July 21, 2026, objecting on relevance, overbreadth, undue burden, proportionality, trade secrets, and availability

---

[1] In addition to Amazon and Microsoft, NAI has moved to compel at least the following third-parties in this district: xAI, Meta, CoreWeave, Google, and Oracle. *See, e.g.,* Case Nos. 7:26-mc-00319, 7:26-mc-00322, 7:26-mc-00323, 7:26-mc-00324, 7:26-mc-00325, 7:26-mc-00327.

[2] Tesla cites exhibits from NAI's Motion, with additional exhibits numbered consecutively.

from NVIDIA, and offering to confer. Ex. 9 (O&Rs). The parties conferred twice, on July 28 and August 7, 2026. Fawzy Decl. ¶¶ 7, 15. At the first conference, Tesla explained that the subpoenas swept far past NVIDIA hardware and software to reach Tesla's own software and non-NVIDIA GPUs, and that their unbounded categories made an investigation burdensome and time consuming—particularly when NAI had served no infringement contentions or any other basis for such broad technical discovery. *Id.* ¶¶ 7-9. NAI offered to reduce that burden and expedite discovery by accepting a declaration in lieu of a document production, identifying what NVIDIA hardware and software Tesla uses and whether Tesla uses that software "out of the box" (*i.e.,* as provided). Tesla agreed to consider the narrowed scope, and because Tesla's counsel was on leave and traveling abroad, the parties agreed Tesla would respond the following week. *Id.*

In reliance, Tesla conducted a reasonable investigation, including through supply chain, IT infrastructure, and engineering teams. *Id.* ¶ 10. On August 4—while that investigation was ongoing—NAI sent a technical questionnaire ("Questionnaire") and a pre-written draft declaration ("Draft Decl."), stating that it was intended to "guide [Tesla's] investigation" and that Tesla "may revise to ensure its accuracy." Ex. 10 at 1. NAI also threatened Tesla that an August 11 discovery deadline "leaves [NAI] no practical alternative but to move to compel by the end of this week or, at the latest, August 10, to preserve its rights." *Id.* NAI's Draft Decl. and Questionnaire went far beyond any scope discussed in the meet-and-confer or information Tesla agreed to investigate. They sought sworn admissions reciting language of asserted patent claims and encompassed broad technical information sought in NAI's sweeping subpoenas. Ex. 12 (Draft Decl.) ¶¶ 7–15; Ex. 11.

At the August 7 conference, Tesla declined to commit to NAI's overbroad Draft Decl. and reiterated that it would investigate what it had agreed to at the first conference: the NVIDIA hardware and software Tesla uses and whether that software is used off the shelf. Ex. 21 at 2. NAI

agreed that would satisfy its subpoenas, "subject to any material gaps." Fawzy Decl. ¶ 13. Working through the weekend, Tesla served the Declaration of Alon Daks on August 10, identifying (1) the NVIDIA GPUs and software Tesla uses and (2) which software it uses as provided. *Id.* ¶ 14; Ex. 20; Ex. 21 at 2. Nothing was missing from the scope discussed on August 7 and confirmed in Tesla's post-conference email. Ex. 21 at 2.

On August 11 (*i.e.,* one day after service of the Daks Decl. and the last day of document discovery), NAI responded by unilaterally declaring the Daks Decl. "materially insufficient" and demanding further information ***never discussed during either meet-and-confer***, including paragraphs 7–15 of the Draft Decl. which were written by NAI, document production as to all RFPs, and a 30(b)(6) deposition. Ex. 21 at 1. Without any further meet-and-confer, NAI filed this Motion on August 17—six days after the written-discovery deadline.

## III. ARGUMENT

Tesla opposes NAI's Motion and also moves to quash NAI's subpoenas for undue burden, as shown below. Fed. R. Civ. P. 45(d)(3)(A) (requiring a court to quash or modify a subpoena that imposes an undue burden); *Hoeflein v. Crescent Drilling & Prod., Inc.*, No. SA 19-cv-01194-FB, 2020 WL 7643122, at *3 (W.D. Tex. Dec. 23, 2020) (Undue burden may be determined based on factors such as relevance, overbreadth, need, time period, specificity, and burden.).

### A. Under NAI's Own Theory, Customer Discovery Ends at Identification and As-Provided Use—Information Tesla Already Provided

NAI's Motion confirms the limited role of customer discovery—only real-world deployment is relevant to NAI's allegation that NVIDIA induces or contributes to infringement by encouraging others to use the accused products. Mot. 2. The only Tesla facts with a potential nexus are (1) NVIDIA GPUs and software Tesla uses, and (2) whether Tesla uses them as provided. Tesla has provided both under oath. Ex. 20 (Daks Decl.) ¶¶ 3–5. Everything else NAI seeks is irrelevant

and NAI has never provided Tesla any information to substantiate further discovery:

**Tesla custom software, software identity, and modification mechanics (RFPs 1, 4; Topics 3–4).** Tesla's proprietary software and wrappers are not NVIDIA products. Once Tesla has confirmed as-provided use of the identified NVIDIA libraries, "how" Tesla builds around them is a Tesla design choice, unrelated to NVIDIA or to any claim between NAI and NVIDIA. Deep customization discovery is, if anything, the opposite of NAI's own "as provided" theory: the more Tesla has customized, the less Tesla's systems prove about what NVIDIA may have induced.

**Architecture, neural-net design, memory, data paths, and scheduling (RFPs 5–12; Topic 5).** NAI admits its requests "track the accused computation … to establish infringement." Mot. 7. That is a method-claim chart aimed at Tesla's systems. If, under its purported infringement theory, NAI is entitled to discovery into the functionality of NVIDIA's provided stack, then it should obtain that information from NVIDIA's documents and party discovery. It should not burden a customer, nor can it force a non-party to sign a declaration that tracks the language of the asserted patent claims. Ex. 12 ¶¶ 7–15.

**NAI's Draft Decl. ¶¶ 7–15 and Questionnaire**. In its August 11 email, NAI claims there are "material gaps" in the Daks Declaration because it doesn't swear that Tesla's systems: "function … as designed and ***intended by NVIDIA***" (¶ 8); freeze pretrained model and network structure (¶ 9); avoid GDS/UVM/unified memory and use certain memory management (¶¶ 10-12); use a single default data path without custom code (¶ 13), and are in use daily (¶ 15). Ex. 21 at 1; Ex. 12 (Draft Decl.) ¶¶ 7–15. This is not product identification or as-provided use evidence. Knowledge of NVIDIA's designs and intent should be sought from NVIDIA.

NAI's argument that the information is uniquely in Tesla's possession is misplaced. Mot. 7. That Tesla possesses knowledge of its own confidential trade secrets (such as its own memory

topology and compiler choices) does not make it relevant or discoverable. Rule 26 asks whether the matter bears on claims and defenses, which is not the case here.

**B. Tesla Fully Performed the Only Compromise NAI Actually Negotiated**

NAI portrays Tesla as a non-party that hid behind objections (Mot. 9), but the opposite is true. *See* supra § II.B. Tesla explained at the July 28 conference why the subpoena's unbounded scope reached far beyond NVIDIA hardware and software; NAI never answered that point and never identified why such broad Tesla technical information mattered to its claims or defenses against NVIDIA. NAI instead agreed to narrow its requests, acknowledging it was short on time before the close of fact discovery. Fawzy Decl. ¶ 8. Despite its counsel being on leave and out of the country, Tesla committed to investigate which NVIDIA GPUs and software it uses and whether it uses them as provided. *Id*. ¶ 9. It consulted its supply chain, IT infrastructure, and software engineering teams, conferred again on August 7, and served a sworn declaration on August 10 supplying precisely those facts. *Id*. ¶¶ 10, 13; Ex. 20 (Daks Decl.). That is good-faith compliance and full performance of Tesla's end of the bargain. NAI's dissatisfaction with Tesla's refusal to adopt its Draft Decl. does not justify compelling Tesla's trade secrets.

NAI's oversimplification that Tesla provided "a five-paragraph declaration" is misleading. Mot. 4. Length is not the test; substance is. The Daks Decl. provided the narrowed scope of information that NAI requested and Tesla agreed to investigate, i.e., which NVIDIA GPUs and software Tesla uses and which ones were used as provided. Ex. 20. Indeed, NAI invited a declaration "in lieu of" broader discovery. It cannot later manufacture unilateral "material gaps." Ex. 10 at 1; Ex. 21 at 1. Tesla should not be penalized for pursuing a reasonable compromise.

**C. The Remaining Requests Are Overbroad, Unduly Burdensome, and Seek Trade Secrets Disproportionate to Any Need**

Contrary to Neural AI's assertion, its subpoenas are not limited to customer-deployment

discovery. Rather, as explained above, RFPs 1–12 and deposition Topics 1–5 demand a full technical autopsy of any Tesla system that touches an NVIDIA GPU and even non-NVIDIA GPU in certain requests, including source code, custom code, architecture, memory topology, data paths, and scheduling. Ex. 5. That is overbroad, unduly burdensome on a non-party under Rule 45(d), and seeks trade secrets far beyond what is proportional to NAI's infringement claims.

For example, RFP 7 asks Tesla to disclose any use of "a pointer" and its use in buffer management—a fundamental concept used in almost all computer programming, without any meaningful limitations.[3] Ex. 5 at 17. It potentially implicates any Tesla system that uses GPUs, including non-NVIDIA GPUs. Similarly, RFPs 5, 8-12 and Topics 3-5 make sweeping requests for Tesla's confidential information about its software architecture, input/output data paths design, memory management, and computations scheduling. Ex. 5 at 16-18. Simply put, these RFPs and Topics either seek the functionality of NVIDIA software, in which case, NAI must obtain that information from NVIDIA, or it seeks the functionality of Tesla software, which is irrelevant, overbroad, and overly burdensome to allegations of infringement by NVIDIA software.

The burden of searching for and collecting this information would be substantial. Compliance with RFPs 5–12 and Topics 3–5 could encompass an investigation, across nearly seven years and company-wide operations, including across systems, workflows, and codebases that use NVIDIA GPUs "to perform computations"; locating the engineers and custodians knowledgeable about each such system; collecting architecture, design, data-flow, control-flow, and execution-flow materials; and reviewing highly sensitive source code and internal technical documents for responsiveness and privilege. Fawzy Decl. ¶ 4. That effort would cut across multiple

---

[3] *See, e.g.*, https://www.geeksforgeeks.org/dsa/pointer-in-programming/ ("Pointer is a variable which stores the memory address of another variable as its value. . . Pointers allows low-level memory access, dynamic memory allocation, and many other functionality.").

organizations and product areas and would divert engineers from ordinary business to potentially reconstruct implementations, memory layouts, buffer strategies, data-transfer paths, and scheduling behavior. *Id*. It is a multi-team technical investigation into core AI infrastructure, with the attendant costs of collection, review, redaction, confidentiality designations, and potential source-code logistics. *Id*. Rules 45(d)(1) and (d)(3) require the Court to protect a non-party from precisely this kind of significant expense and disruption.

Further, NAI cannot show "substantial need" for the information it seeks in RFPs 5–12 and Topics 3–5 that "cannot be otherwise met" under Rule 45(d)(3)(C), given discovery from NVIDIA, public information, and Tesla's Daks Decl. This is especially so because NAI's subpoenas ask for confidential Tesla trade secrets about the company's AI operations, including regarding source code and related internal architecture, design, and data flow, input/output data handling, memory layout, buffer strategies, and scheduling strategies. But NAI has not shown, during the meet-and-confers or in its Motion, that it is entitled to so such highly confidential trade secret information without violating Rule 45(d)(3)(B)(i).

Finally, NAI's pre-written Draft Decl. and Questionnaire are not "focused" as it alleges. Rather, they require Tesla to map—and swear to—its GPU memory hierarchy, input/output data paths, buffer reuse, compilation toolchain, model structure, and supposed conformity with "NVIDIA's design." Those topics are the same trade-secret, overbroad demands embodied in RFPs 4–12 and Topics 3–5. *See* Ex. 12 (Draft Decl.), ¶¶ 9-13; Ex. 11 (sections re "Input Data Path" and "Output Data Path and Memory Transfers"). NAI's Draft Decl. even asks Tesla to make legal conclusions and speculations, such as declaring that "the hardware and NVIDIA software function together ***as designed and intended by NVIDIA***." Ex. 12, ¶ 8. Rule 45 allows proportionate third-party discovery. It does not allow a plaintiff to conscript a non-party into proving its infringement

case. Tesla's declaration already provided the former; the Court should refuse the latter.

**D. NAI Served Its Subpoenas Too Late and Filed Its Motion Out of Time**

NAI's subpoenas are dilatory. A subpoenaing party must pursue third-party discovery with diligence; merely serving a subpoena before the deadline is not enough where the requests could not reasonably be answered, narrowed, collected, and produced before discovery closed. Fed. R. Civ. P. 45(d)(1). Courts refuse to enforce last-minute third-party subpoenas that leave no realistic path to complete discovery by the cutoff. Indeed, Rule 45 is a discovery device, not an "end-run" around the discovery process. *See Thomas v. IEM, Inc.*, No. 06-886-B-M2, 2008 WL 695230 (M.D. La. Mar. 12, 2008); *Burns v. Bank of America*, No. 03-cv-1685, 2007 WL 1589437 (S.D.N.Y. June 4, 2007); Fed. R. Civ. P. 26(b)(2)(C)(ii), 45(d)(1). NAI began subpoenaing NVIDIA customers such as Amazon and Microsoft in October 2025, but waited until June 25, 2026, to serve Tesla—a publicly known NVIDIA customer. *See* Mot. 3, 7 (noting "Tesla is a significant [NVIDIA] customer"); Exs. 22-23. NAI's August 4 email admitted it was racing that deadline and threatened a motion "to preserve its rights." Ex. 10 at 1. By the July 28 meet-and-confer, NAI knew it was too late to seek twelve deep technical RFPs and corporate testimony. Fawzy Decl. ¶¶ 7-8. NAI's own delay left no realistic time for meaningful non-party investigation, trade-secret review, meet-and-confers, or production of the vast scope of materials sought in RFPs 5–12.

Further, NAI's Motion was untimely. Courts measure the timeliness of a motion to compel against the deadline for ***completion of discovery, not against a later motion deadline***. In *Days Inn Worldwide, Inc. v. Sonia Invs.*, the N.D. Texas court denied a motion to compel filed two weeks after the discovery deadline even though it was filed before the "deadline for other motions." 237 F.R.D. 395, 396 (N.D. Tex. 2006). In ruling so, the court noted that there was a consensus among the 10th, 7th, 6th, and 1st Circuits and various district courts that "courts generally looked to the deadline for ***completion of discovery*** in considering whether a motion to compel has been timely

filed." *Id*. at 397 (collecting cases). NAI filed the Motion six days ***after*** written discovery closed—seeking post-deadline production from a non-party. NAI's lack of diligence in launching third-party discovery cannot justify a lack of diligence in enforcing it—and neither supports reopening written discovery against Tesla after the deadline. The Motion should be denied as untimely.[4]

### E. NAI's Motion Should Have Been Filed in Austin—the Place of Compliance

NAI's Motion was improperly filed in Midland. Rule 45 requires compliance within 100 miles of where the subpoenaed person resides, works, or regularly conducts business, Fed. R. Civ. P. 45(c)(2)(A), and any motion to compel must be filed where compliance is required. Fed. R. Civ. P. 45(d)(2)(B)(i); *see also* Fed. R. Civ. P. 37(a)(2). NAI's subpoenas designated Austin as the place of compliance. *See* Ex. 5; Mot. 5. NAI, however, filed in Midland, more than 300 miles from Tesla's Austin headquarters. The underlying case's location does not override Rule 45, and district-wide jurisdiction does not satisfy Rule 45's location requirement. Further, because the written discovery deadline has passed, the Court should deny the Motion without leave to re-file.

## IV. CONCLUSION

For the foregoing reasons, Tesla respectfully requests that the Court (1) deny NAI's Motion in its entirety, and (2) quash NAI's document and deposition subpoenas. Alternatively, if the Court does not deny the Motion in full, it should: (1) hold that the Daks Decl. satisfies Tesla's obligations as to identification and as-provided use; and (2) modify the subpoenas to those subjects only and quash RFPs 1 and 3–12 and Topics 1–5.

---

[4] NAI relies on a stipulation with *NVIDIA* permitting motions to compel third parties through August 18, 2026. Mot. 3. But Tesla was not a party to that stipulation, and it was never adopted by court order. Fed. R. Civ. P. 29 (stipulations regulate procedure between parties, not non-party burdens).

Dated: August 24, 2026

Respectfully submitted,

*/s/ Jun Zheng*

Jun Zheng
TX Bar No. 24102681
zhengjun@tesla.com
Tesla, Inc.
1 Tesla Rd
Austin, TX 78725
(512) 417-3528

Ashraf Fawzy
DC Bar No. 989132
afawzy@tesla.com
Tesla, Inc.
800 Connecticut Ave. NW
Washington, DC 20006
(202) 905-9221

Gina H. Cremona
CA Bar No. 305392
gcremona@tesla.com
Tesla, Inc.
1501 Page Mill Rd.
Palo Alto, CA 94304
(650) 647-0015

*Counsel for Tesla, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system when it is filed with the system.

*/s/ Jun Zheng*

Jun Zheng