**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| NEURAL AI, LLC,<br><br>Petitioner,<br><br>v.<br><br>TESLA, INC.,<br><br>Respondent. | Misc. Case No. 7:26-mc-00318-LS |

**DECLARATION OF ASHRAF FAWZY IN SUPPORT OF TESLA, INC.'S OPPOSITION TO NEURAL AI, LLC'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA AND CROSS MOTION TO QUASH NEURAL AI, LLC'S SUBPOENAS**

I, Ashraf Fawzy, hereby declare as follows:

1. I am presently employed by Tesla, Inc. ("Tesla") and my official title is Managing Counsel, IP Litigation. I am an attorney duly licensed to practice in Washington D.C. and am admitted to the Western District of Texas. I'm counsel for Tesla in the above-captioned civil action.

2. I make this declaration in support of Tesla's Opposition to Neural AI's ("NAI") Motion to Compel Compliance with Subpoena and Cross Motion to Quash Neural AI, LLC's Subpoenas. I have personal knowledge about the matters in this declaration and, if called to testify, could and would testify competently to them.

3. NAI served Tesla subpoenas for document production and deposition testimony on June 25, 2026. Based on publicly available information, NAI's action against NVIDIA was filed on September 13, 2024, and NAI sought third-party discovery from NVIDIA customers such as Amazon and Microsoft in the underlying action as early as October 15, 2025.

4. The burden to Tesla of searching for and collecting the information requested by NAI's subpoenas would be substantial. Compliance with the subpoenas entail identification and investigation, across nearly seven years (from September 2018 to present) and company-wide operations, including into different systems, workflows, and codebases that use NVIDIA GPUs "to perform computations"; locating the engineers and custodians knowledgeable about each such system; searching for and collecting architecture, design, data-flow, control-flow, and execution-flow materials; and reviewing highly sensitive source code and internal technical documents for responsiveness and privilege. That effort would cut across multiple organizations and product areas and would divert engineers from ordinary business to potentially reconstruct historical implementations, memory layouts, buffer strategies, data-transfer paths, and scheduling behavior. It is a multi-team technical investigation into Tesla's core AI infrastructure, with the attendant costs of collection, review, redaction, confidentiality designations, and potential source-code logistics.

5. NAI's subpoena for document production set a compliance date of July 14, 2026, just over two weeks after the service date. Tesla's counsel promptly reached out to NAI's counsel for a three-week extension. To which NAI's counsel responded that it could only agree to a one-week extension "[g]iving the upcoming close of fact discovery."

6. On July 21, 2026, Tesla timely served its written objections and responses to NAI's subpoenas, objecting to, among others, relevance, overbreadth, undue burden, and seeking confidential trade secrets unproportional to NAI's needs, and offering to meet and confer to narrow the scope of the requests.

7. The following week, on July 28, 2026, Tesla held its first meet-and-confer with NAI's counsel. During the conference, Tesla began the call by explaining the basis for its

objections, including that the subpoenas are overbroad, unduly burdensome, and seek Tesla confidential information irrelevant to NAI's infringement claim against NVIDIA. Tesla further explained how NAI's subpoenas were not just limited to NVIDA GPUs and software, but that they also potentially implicated Tesla' own software and non-NIDIA GPUs. Tesla explained that the unbounded categories of information sought by NAI's subpoenas made the investigation burdensome and time consuming, particularly given the short amount of time NAI provided for compliance. Tesla also explained that it if NAI wanted information as to what NVIDIA provided to its customers, it should seek such information from parties to the litigation and that Tesla did not believe NAI had a basis for the breadth of information sought in its subpoena, particularly without any further substantiation.

8. In response, NAI acknowledged that it was short on time and stated that it was willing to reduce Tesla's burden and expedite the discovery by accepting a declaration in lieu of a document production, and that the declaration would be based on the results of Tesla's investigation as to what NVIDIA GPUs and software Tesla uses and whether Tesla uses the software "out of the box."

9. Tesla agreed to consider NAI's narrowed scope. Tesla's counsel was on leave and traveling out of the country at the time. Thus, the parties agreed that the parties would follow up by email the following week.

10. After the first meet-and-confer on July 28, 2026, and in reliance on NAI's statements, Tesla began a thorough investigation, including through its supply chain, IT infrastructure, and engineering teams, on the subjects the parties' agreed on during the conference, i.e., which NVIDIA GPUs and software Tesla uses and whether Tesla uses them as provided.

11. On August 4, 2026, while Tesla's investigation was still ongoing, NAI sent Tesla a

technical questionnaire ("Questionnaire") and a pre-written draft declaration ("Draft Declaration"), stating that it was intended to "guide [Tesla's] investigation" and that Tesla "may revise to ensure its accuracy."

12. In the same August 4, 2026 email, NAI threatened Tesla that an August 11, 2026 discovery deadline "leaves Neural AI no practical alternative but to move to compel by the end of this week or, at the latest, August 10, to preserve its rights."

13. Three days later, on Friday, August 7, 2026, Tesla had a second meet-and-confer with NAI. During that conference, Tesla stated that it would not commit to NAI's overbroad Draft Declaration and reiterated that it would investigate what it has agreed to during the first conference, i.e., which NVIDIA GPUs and software it uses and whether the software was used as provided by NVDIA. NAI agreed that such a search would satisfy its subpoenas, "subject to any material gaps."

14. After the Friday meet-and-confer, Tesla promptly worked through the weekend, collecting the relevant information and working with its declarant, a senior staff software engineer. And on Monday, August 10, 2026, a day before NAI's written discovery deadline, Tesla served the declaration of Alon Daks.

15. The next day, on August 11, 2026, NAI responded to Tesla, unilaterally declaring that the Daks declaration was "materially insufficient" and demanding Tesla to produce further information that was never discussed during either meet-and-confer, including paragraphs 7–15 of the Draft Declaration pre-written by NAI, document production as to all document requests in the subpoenas, and a 30(b)(6) deposition. Without any further meet-and-confer, NAI filed this Motion on August 17, 2026.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on August 24, 2026

Ashraf Fawzy (Aug 24, 2026 19:27:26 EDT)

Ashraf Fawzy