# EXHIBIT 22

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| **NEURAL AI, LLC,**<br><br>**Petitioner,**<br><br>**v.**<br><br>**AMAZON.COM, INC.,**<br><br>**Respondent.** | **Case No. 7:26-mc-00241**<br><br>**[Underlying Case: USDC Western District of Texas No. 7:24-cv-00221-ADA-DTG]** |

**NEURAL AI'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL COMPLIANCE WITH SUBPOENA SERVED ON THIRD-PARTY AMAZON.COM, INC.**

# TABLE OF CONTENTS


A. FACTUAL BACKGROUND .......... 1

1. The Underlying Litigation .......... 1
2. The Rule 45 Subpoena to Amazon and Amazon's Initial Objections .......... 2
3. NAI's Meet-and-Confer Efforts and Narrowing and Amazon's Continued Non-Compliance .......... 2
4. Procedural History .......... 4

B. THE COURT HAS JURISDICTION OVER THIS DISPUTE BECAUSE THE PLACE OF COMPLIANCE IN AUSTIN IS PROPER. .......... 4

C. AMAZON MUST PRODUCE DOCUMENTS RESPONSIVE TO THE SUBPOENA. .......... 6

1. The subpoenaed materials are relevant and proportional to the needs of the case. .......... 7
2. Amazon's burden objections are unsupported. .......... 9
3. Amazon cannot continue to defer production with vague promises. .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*611 Carpenter LLC v. Atlantic Casualty Ins. Co.*,
2024 WL 1977160 (W.D. Tex. April 30, 2024) ....................7, 9

*Conservation L. Found., Inc. v. Equilon Enters. LLC*,
No. CV 17-396-WES, 2025 WL 2821238 (D.R.I. Oct. 3, 2025) ....................5

*Linet Americas, Inc. v. Hill-Rom Holdings, Inc.*,
No. 21-cv-6890, 2025 WL 889579 (N.D. Ill. Jan. 27, 2025)....................6

*Meritage Homes, LLC v. AIG Specialty Ins. Co.*,
No. 1:23-MC-00944-DII, 2024 WL 221448 (W.D. Tex. Jan. 18, 2024)....................4

*Phila. Indem. Ins. Co. v. Odessa Family YMCA*,
No. 7:20-CV-00134-DC, 2020 WL 6484069 (W.D. Tex. June 26, 2020) ....................4

*Trs. of Bos. Univ. v. Everlight Elecs. Co.*,
No. 12-CV-11935-PBS, 2014 WL 12792496 (D. Mass. Sept. 8, 2014)....................5, 6

*Velocity Pat. LLC v. FCA US LLC*,
No. 13 CV 8419, 2017 WL 11893112 (N.D. Ill. Nov. 2, 2017)....................5

*Waller v. Jet Specialty, Inc.*,
No. 23-CV-00121-DC-RCG, 2024 WL 7050192 (W.D. Tex. Nov. 19, 2024) ....................7

**Rules**

Federal Rule of Civil Procedure 26 ....................7, 10

Federal Rule of Civil Procedure 45 .................... *passim*

Despite eight months of good-faith efforts from petitioner Neural AI, LLC ("NAI") to negotiate with third-party subpoena recipient and respondent Amazon.com, Inc. ("Amazon"), Amazon still has not produced a single document in response to the subpoena NAI served on October 15, 2025. During that eight-month period, NAI sought discovery directly from the defendant in the underlying case NVIDIA Corporation ("NVIDIA"), used information learned from NVIDIA to try to guide Amazon's search for responsive documents, provided additional explanation of the infringing technology, and ultimately narrowed its subpoena to only 9 priority requests for production. Still, Amazon has not committed to producing a single document and instead only agreed generally to investigate the existence of possibly responsive documents and information. That sort of investigation is something that should have occurred months ago when Amazon first received the subpoena. Its vague promises to search now—eight months after the subpoena was served and less than two months before fact discovery closes in the underlying case—is too little too late. NAI respectfully requests that the Court issue an order compelling Amazon to comply with the Rule 45 subpoena NAI served on October 15 and requiring production of documents responsive to NAI's nine requests for production by a date certain prior to the close of fact discovery in the underlying case.

## A. FACTUAL BACKGROUND

### 1. The Underlying Litigation

The underlying action—*Neural AI, LLC v. NVIDIA Corporation* 7:24-cv-00221-ADA-DTG (W.D. Tex.)—involves claims of direct, indirect, and induced patent infringement by NVIDIA relating to U.S. Patent Nos. 8,648,867; RE49,461; and RE48,438 (the "Patents-in-Suit"). The Patents-in-Suit teach systems and methods for GPU-accelerated computing technology. NAI alleges that NVIDIA's hardware (i.e., its GPUs and servers) and software (i.e., NeMo, TensorRT, and cuDNN) infringe the Patents-in-Suit and that NAI encourages its customers to combine those

products in an infringing manner. Amazon is one of NVIDIA's largest customers and a real-world integrator of the accused GPU-acceleration hardware and software. NAI has subpoenaed multiple of NVIDIA's customers seeking documents in their unique possession to support its allegations of indirect and induced infringement. NAI seeks production of those documents prior to August 11, 2026, the close of fact discovery in the underlying case.

**2. The Rule 45 Subpoena to Amazon and Amazon's Initial Objections**

NAI served its Rule 45 subpoena on Amazon on October 15, 2026. NAI noticed the place of compliance at 100 Congress Avenue, Suite 2000, Austin, Texas 78701. *See* Portuguese Decl., Exhibit A at 6. NAI chose this place of compliance because Amazon has a significant presence and conducts business in Austin, Texas through its corporate office buildings at 11501 Alterra Parkway, Austin, Texas 78758. *See* Portuguese Decl., Exhibit B. This Amazon corporate office is only 12 miles away from the place of compliance, and Amazon currently has 1058 job listings for in-person roles at its Austin location. *See* Portuguese Decl., Exhibit C. The initial subpoena contained 20 requests relating to Amazon's purchase, use, incorporation, sale, or development of products containing or depending on the accused NVIDIA hardware and software. Exhibit A. The requests were limited in time to the relevant damages period in the underlying case, from September 13, 2018 to the present, and limited in scope to U.S.-based or U.S.-directed activity. *Id.*

Amazon served objections on November 13, 2025. *See* Portuguese Decl., Exhibit D. Amazon objected to the place of compliance because it was more than 100 miles from Amazon's headquarters in Seattle, Washington. *Id.* at 3. As to the substance of the requests, Amazon refused to search for or produce documents responsive to any request for production. *See generally id.*

**3. NAI's Meet-and-Confer Efforts and Narrowing and Amazon's Continued Non-Compliance**

The parties first met and conferred on November 19, 2025. At that time and Amazon's

request, NAI agreed to seek additional information from NVIDIA first. NVIDIA subsequently produced documents and information confirming that Amazon is a significant NVIDIA customer but containing gaps about how Amazon actually used itself or bundled, configured, and sold the accused products to its customers.

Shortly after NAI had received documents confirming that Amazon was a significant NVIDIA customer and partner, Neural AI re-engaged Amazon on April 3, 2026, and the parties conferred again on April 13, 2026. On April 27, 2026, NAI substantially narrowed the subpoena to nine priority requests (Nos. 5, 7-10, 12-14, and 19). *See* Portuguese Decl., Exhibit E at 4-6. At the same time, NAI provided more detailed descriptions of the accused functionality and the type of bundling of NVIDIA hardware and software NAI is interested in and, to help Amazon in its search for responsive information, identified the specific NVIDIA hardware products Amazon had acquired during the relevant period. The parties met and conferred again on May 21 but, as of that meet and confer, Amazon still had done little to no investigation into how it uses the NVIDIA products it purchased or what responsive documents it may have.

On June 4, 2026, Amazon's counsel wrote by email that Amazon was still "in the process of making our way through the orgs" and "figuring out whether and where they have the information." *See* Exhibit E at 1. But for the first time—over 7 months after Amazon received the subpoena—Amazon finally stated it "had the lay of the land" and would "complete a reasonable search and provide you with what we're able to find three weeks from tomorrow." *Id.* The parties conferred on June 5, at which time NAI learned that Amazon's commitment to search for documents was illusory. Amazon still did not know if the information it was compiling was "garbage or not" and could not commit that it would actually produce any responsive documents at the conclusion of its three-week search.

### 4. Procedural History

On June 1, 2026, while the parties were continuing to meet and confer, NAI sent Amazon a dispute chart pursuant to Section IV of the Court's March 5, 2025, Standing Order Governing Proceedings (OGP)—Patent Cases ("OGP"). Because Amazon was a third party to the underlying dispute, NAI asked Amazon to respond to the dispute chart in 7 days, rather than the 3 days contemplated in the OGP. On June 9, 2026, NAI sent an updated dispute chart taking into account the information Amazon provided on the parties' most recent meet and confer. Amazon completed its portion of the dispute chart on June 12, 2026. It objected to the dispute chart process and jurisdiction as threshold issues and on the merits.

NAI submitted the dispute chart to the Court on June 15, 2026. The Court held a hearing on the dispute chart on June 17, 2026. At the hearing, the Court instructed NAI to file a motion to compel, rather than use the dispute chart process. *See* Portuguese Decl., Exhibit F at 37:14-38:6.

## B. THE COURT HAS JURISDICTION OVER THIS DISPUTE BECAUSE THE PLACE OF COMPLIANCE IN AUSTIN IS PROPER.

The District Court for the Western District of Texas is the proper court to resolve Neural AI's motion to compel because Rule 45 directs the serving party to seek an order compelling production in "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(2)(B)(i); *see also Meritage Homes, LLC v. AIG Specialty Ins. Co.*, No. 1:23-MC-00944-DII, 2024 WL 221448, at *4 (W.D. Tex. Jan. 18, 2024); *Phila. Indem. Ins. Co. v. Odessa Family YMCA*, No. 7:20-CV-00134-DC, 2020 WL 6484069, at *1 (W.D. Tex. June 26, 2020). The place of compliance for the subpoena at issue is located at 100 Congress Ave., Ste. 2000, Austin, Texas 78701, which is located within this District. This Court's jurisdiction, then, turns on whether the place of compliance listed in the subpoena is proper. *See* Exhibit F at 32:3-5 (Amazon agrees with NAI that the analysis "boils down to whether the place of compliance is correct.").

For document subpoenas, Rule 45(c)(2)(A) permits production "at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." The issuing party is not limited to selecting a place of compliance only within 100 miles of the recipient's headquarters. *See, e.g.*, *Conservation L. Found., Inc. v. Equilon Enters. LLC*, No. CV 17-396-WES, 2025 WL 2821238, at *1 (D.R.I. Oct. 3, 2025) (rejecting argument that the place where an entity "regularly transactions business in person" is limited to the corporate headquarters because it "ignores the plain language of the Rule."). Rule 45 could have stated such a narrow requirement, but it did not. Instead, the Rule allows for a place of compliance within 100 miles of any location where the recipient transacts business in person. For a company like Amazon that conducts significant business nationally, a party issuing a subpoena has many choices.

The place of compliance is not limited to a location where potential document custodians are located. First, such a rule is logically non-sensical because the party serving the subpoena cannot know where the custodians possessing relevant documents are located before serving the subpoena. Rule 45 cannot require that a party serving a subpoena on a large, nation-wide company play a guessing game with the compliance location and cross its fingers that the custodian with documents responsive to its subpoena is located near the place of compliance, rather than at a regional office across the country. Second, courts routinely reject this very argument. *See, e.g.*, *Velocity Pat. LLC v. FCA US LLC*, No. 13 CV 8419, 2017 WL 11893112, at *4 (N.D. Ill. Nov. 2, 2017) (holding that the place of compliance was proper within 100 miles of any of the subpoena target's regional offices or facilities and rejecting argument that, "regardless of its other locations," its headquarters was the "only location where it stores" requested documents); *Trs. of Bos. Univ. v. Everlight Elecs. Co.*, No. 12-CV-11935-PBS, 2014 WL 12792496, at *3 (D. Mass. Sept. 8, 2014) (holding that place of compliance in Boston was proper because Apple had two offices and

four retail locations in Massachusetts and rejecting Apple's argument that its headquarters and relevant documents are in Cupertino, California). "Rule 45(c) says nothing about the location of documents subpoenaed." *Trs. of Bos. Univ.*, 2014 WL 12792496, at *3.

Amazon's argument that it can produce documents only within 100 miles of its Seattle, Washington headquarters makes even less sense given its role as one of "the largest cloud infrastructure providers in the country." Exhibit F at 36:11-15. Information stored on the cloud, rather than on local hard drives, can be accessed from anywhere, including by Amazon's employees in the Austin location. Given recent technology advances, largely driven by Amazon's own cloud business, it is a fiction that Amazon would physically produce documents at the Austin address listed as the place of compliance; of course, Amazon will send responsive documents to NAI electronically. But even if Amazon had to produce physical documents, its Austin-based employees could access the documents remotely, print them out, and deliver them only 12 miles from Amazon's Austin office to the place of compliance.

Here, the Austin place of compliance satisfies Rule 45(c)(2)(A). Amazon regularly transacts business in person in Austin through its corporate office and technology hub on Alterra Parkway, only 12 miles away from the place of compliance. This corporate office location is not empty or dormant. Amazon's own job postings reflected 1058 open Austin positions as of June 23, 2026. *See* Exhibit C; *see also Linet Americas, Inc. v. Hill-Rom Holdings, Inc.*, No. 21-cv-6890, 2025 WL 889579, at *4 (N.D. Ill. Jan. 27, 2025) (relying on the subpoena recipient's job postings for positions in Chicago to find that a place of compliance within 100 miles of Chicago was proper). Because the subpoena's listed place of compliance in Austin is proper, this Court has jurisdiction to resolve this motion to compel.

## C. AMAZON MUST PRODUCE DOCUMENTS RESPONSIVE TO THE SUBPOENA.

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery regarding any nonprivileged matter that is relevant to the parties' claims or defenses and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Where, as here, a non-party refuses discovery in response to a validly issued subpoena, Federal Rule of Civil Procedure 45 provides the Court for the district where compliance is required with broad discretion to compel the production of documents and information from third parties. Fed. R. Civ. P. 45(d)(2)(B)(i); *Waller v. Jet Specialty, Inc.*, No. 23-CV-00121-DC-RCG, 2024 WL 7050192, at *1 (W.D. Tex. Nov. 19, 2024). Once a party moving to compel discovery establishes that the materials are relevant or will lead to the discovery of admissible evidence, the burden rests upon the nonparty resisting discovery to substantiate its objections. *611 Carpenter LLC v. Atlantic Casualty Ins. Co.*, 2024 WL 1977160, at *1 (W.D. Tex. April 30, 2024) (granting party's motion to compel non-party subpoena). The non-party "must state with specificity the objection and how it relates to the particular request being opposed, and not merely that it is overly broad and burdensome." *Id.*

**1. The subpoenaed materials are relevant and proportional to the needs of the case.**

Neural AI's narrowed requests seek documents that are directly relevant to proving how NVIDIA's accused GPU-acceleration technology is deployed and used in real-world systems. Amazon is one of NVIDIA's most significant customers and a large-scale integrator of the accused hardware and software. Publicly available information on Amazon's website indicate that Amazon and NVIDIA have a deep partnership, collaborating on the deployment of more than one million NVIDIA GPUs across Amazon Web Services Regions.[1] *See* Portuguese Decl., Exhibit G at 1.

The narrowed requests target nine specific categories of documents:

---

1 NVIDIA's confidential documents also demonstrate the close relationship between NVIDIA and Amazon, but NAI cites only public documents to avoid the need for sealing.

- RFP 5 seeks documents sufficient to identify Amazon's products or services that depend on the accused technology.
- RFPs 7, 8, 9 and 10 seek technical documents, source code, configuration files, development notes and other documents sufficient to show how Amazon's products or services implement, incorporate, use, integrate, invoke, or interact with the accused NVIDIA products.
- RFP 12 seeks communications with NVIDIA relating to the setup, integration, customization, support, or use of the accused NVIDIA products.
- RFP 13 seeks Amazon's internal documents or reports reflecting the benefits or business value derived from its use of the accused NVIDIA products.
- RFP 14 seeks the revenue, usage, or subscription data for Amazon's products or services that relied on accused NVIDIA products.
- RFP 19 seeks internal engineering documentation sufficient to show the design, development, or operation of Amazon's products that use, incorporate, or were developed in connection with accused NVIDIA products.

*See* Exhibit A. Each category is directly relevant to proving how the accused products operate in commercial deployments and how Amazon's systems interact with NVIDIA's GPU-acceleration software—including CUDA, TensorRT, and PyTorch with CUDA. In fact, the Court already determined that these same requests are relevant in the context of a discovery dispute with Dell, another NVIDIA customer. *See* Exhibit F at 22:4-20 ("As I see these requests for production, I do believe that they are targeted to relevant information. . . . I believe the documents that identify and include that information, at least to an extent, are relevant to the underlying lawsuit. And that same thought permeates through all of these.").

These materials are also uniquely in Amazon's possession. NVIDIA has already confirmed that it does not possess information about how its customers use its products. *See* Portuguese Decl., Exhibit H at 22:2-11. Internal integration materials, architecture documents, implementation artifacts, internal communications, and revenue and usage data showing real-world deployment of the accused technology exist only in Amazon's files. Neural AI cannot obtain equivalent information from any other source.

The requests are proportional to the needs of the case. Neural AI has narrowed from a broader initial set to nine priority requests. Neural AI further narrowed the focus to three combinations of NVIDIA products: use of an NVIDIA GPU in combination with (1) an original, custom, or modified version of PyTorch using CUDA; (2) TensorRT; and (3) applications that utilize PyTorch with CUDA or TensorRT. *See* Exhibit E at 5. Meanwhile, the temporal scope (September 13, 2018 to present) tracks the relevant damages period, and the requests are limited to U.S.-based or -directed activity. Given the importance of the issues at stake and the amount in controversy in the underlying patent infringement action, the narrowed requests are proportional.

**2. Amazon's burden objections are unsupported.**

To start, Amazon's written objections to burden are inadequate because they do not "state with specificity" the burden Amazon would face in producing responsive documents. *611 Carpenter LLC*, 2024 WL 1977160, at *1. The boilerplate objections, absent evidence of burden, do not show that the burden of complying with the subpoena is undue and cannot outweigh the relevance of the discovery sought.

Further, NAI has taken reasonable steps to minimize Amazon's burden. NAI spent months pursuing information directly from NVIDIA to avoid the need to obtain the same from Amazon. For example, NAI withdrew the initial RFP 1 ("Documents sufficient to identify all types of NVIDIA GPU-Acceleration Hardware purchased, acquired, or deployed by You.") because it obtained data regarding Amazon's purchases from NVIDIA itself. Further, even for requests for documents only within Amazon's possession, NAI prioritized its requests and agreed to narrow the subpoena to only 9 RFPs, most of which are requests only for documents "sufficient to show" the requested information. At the same time, NAI provided Amazon with information that NAI thought would facilitate the investigation, including (1) a detailed explanation of the specific software and hardware combinations that NAI alleges infringes and (2) a list of the accused

products Amazon purchased from NVIDIA during the relevant period so that Amazon could search for information about those specific products. NAI also regularly offered on meet and confers that it was willing to discuss and work through any burden-related issues Amazon encountered in its investigation, but to this day, Amazon has never articulated a specific hardship in responding to the subpoena, as opposed to general allegations that the subpoena requests are too broad.

**3. Amazon cannot continue to defer production with vague promises.**

As described above, NAI has been patient and cooperative with Amazon. But the fact discovery deadline in the underlying case is now less than two months away. Amazon's vague promise to look into the matter and search for undefined documents—made for the first time on June 4, 2026—is insufficient. NAI had no choice but to seek the Court's intervention. Given the upcoming discovery deadline, NAI suggests that the Court require Amazon to begin producing documents within 7 days of the Court's order on this motion and to complete production by no later than Friday, July 24, 2026.

For the foregoing reasons, NAI respectfully requests that this Court (1) overrule Amazon's place-of-compliance objections and hold that this Court has jurisdiction to rule on this motion to compel; (2) compel Amazon to produce non-privileged documents responsive to Neural AI's nine priority subpoena requests—RFPs 5, 7-10, 12-14, and 19; (3) require Amazon to begin rolling production within 7 days of the Court's order on this motion and to complete production by Friday, July 24, 2026; and (4) require Amazon to serve a privilege log compliant with Fed. R. Civ. P. 45(e)(2) and 26(b)(5) for any responsive materials withheld on privilege or work-product grounds, concurrent with its final production.

Dated: June 24, 2026

Respectfully submitted,

/s/ *Mark Siegmund*
Mark D. Siegmund
Texas State Bar No. 24117055
CHERRY JOHNSON SIEGMUND JAMES PC
Bridgeview Center
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710
msiegmund@cjsjlaw.com

Max L. Tribble
Texas State Bar 20213950
Brian D. Melton
Texas State Bar 24010620
Rocco Magni
Texas State Bar 24092745
Samuel Drezdzon
Texas State Bar 24117374
SUSMAN GODFREY L.L.P.
1000 Louisiana
Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
mtribble@susmangodfrey.com
bmelton@susmangodfrey.com
rmagni@susmangodfrey.com
sdrezdzon@susmangodfrey.com

Tamar Lusztig
NY State Bar 5125174
Emily Portuguese
NY State Bar 5920327
One Manhattan West, 50th Floor
New York, NY 10001
tlusztig@susmangodfrey.com
eportuguese@susmangodfrey.com

Tanner Laiche
WA State Bar 60450
401 Union Street, Suite 3000

Seattle, WA 98101
tlaiche@susmangodfrey.com

Max Ciccarelli
Texas State Bar No. 00787242
CICCARELLI LAW FIRM LLC
100 N. 6th Street, Suite 502
Waco, Texas 76701
Max@CiccarelliLawFirm.com

*Attorneys for Petitioner Neural AI, LLC*

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that a true and correct copy of the foregoing document was served on all parties via electronic mail on this 24th day of June 2026.

*/s/ Mark D. Siegmund*
Mark D. Siegmund

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| **NEURAL AI, LLC,**<br>**Petitioner,**<br>**v.**<br>**AMAZON.COM, INC.,**<br>**Respondent.** | **Case No. 7:26-mc-00241**<br>**[Underlying Case: USDC Western District of Texas No. 7:24-cv-00221-ADA-DTG]** |

**MEMORANDUM IN RESPONSE TO PETITIONER'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA SERVED ON THIRD-PARTY AMAZON.COM, INC.**

## I. INTRODUCTION

Neural AI, LLC's ("NAI") Motion should be denied for two reasons. First, the subpoena is invalid on its face because it demands a place of compliance that is not within 100 miles of Amazon's headquarters or relevant document custodians; i.e., not where any responsive documents will be found. Second, no disputes are ripe for decision. In response to non-party Amazon's objections to NAI's overbroad subpoena, the parties conferred and discussed Amazon producing one thing and only one thing: a spreadsheet containing a report of the volume of accused NVIDIA GPUs configured in one of three allegedly relevant ways. During the June 17 hearing, Amazon confirmed it had agreed to complete its production of this information by June 26. However, two days prior to June 26, NAI filed its Motion. Amazon produced the volume information on June 26, mooting NAI's motion as it relates to the volume information.

Prior to filing the Motion, NAI did not confer with Amazon regarding any other issues. NAI's failure to meet and confer on these issues violates Local Civil Rule CV-7(g) (meet and confer requirement) and Fed. R. Civ. P. 45(d)(1) (NAI must "take reasonable steps to avoid imposing undue burden or expense on" Amazon). In the June 17 hearing, the Court ordered NAI to confer with Dell to more precisely define various disputes on similar requests). NAI has no excuse for not conferring here. The Court should deny NAI's motion.

## II. FACTUAL BACKGROUND

On October 15, 2025, NAI served its subpoena setting the place of compliance as Austin, Texas. Dkt. 1-3, at 2.[1] NAI's subpoena contained 20 requests amounting to discovery akin to that which would be served on a party in patent litigation. Dkt. 1-3. On November 13, 2025, Amazon objected that NAI's requests were facially overly broad, unduly burdensome, and sought irrelevant information. Importantly, Amazon stated that it needed more information before it could even conduct a search. *See generally* Dkt. 1-6. Amazon further objected "to the subpoena as improper because the demanded place of production is not within 100 miles of Seattle, Washington, where Amazon resides and regularly transacts business in person." *Id*. at 4.

On November 19, 2025, the parties conferred, and Amazon "explained that we needed more information to conduct a search[,]" including at a minimum the identification of relevant products and the information NAI sought about those products that was unavailable from NVIDIA. Dkt. 1-7, at 9. NAI did not dispute that Amazon needed this information, and explained that NAI was "still pursuing discovery from defendant and [was] working to better identify the products [NVIDIA] supplied . . . that were relevant, as well as what [NAI] needed from [Amazon] about those products that [NAI] couldn't get from defendant." *Id*. After months of silence, on April 3, 2026, NAI asked Amazon for an update, including whether "Amazon . . . will search for and produce documents responsive to each of the subpoena requests." *Id.* at 10. Amazon reminded NAI that Amazon was awaiting the information NAI agreed to provide last November. *Id.* at 9. Namely, Amazon stated that "[w]hen we last spoke five months ago, we explained that we needed more information to conduct a search" and NAI "agreed to circle back with [Amazon] once you had that information." *Id*.

On April 13, 2026, the parties again conferred, and Amazon again reminded NAI's counsel what NAI had agreed to provide back in November 2025. Dkt. 1-7, at 6. On April 27, 2026, for the first time, NAI provided Amazon with the listing of relevant products, and the configuration

---

[1] NAI is plaintiff in the underlying patent dispute with defendant NVIDIA.

that NAI contended was relevant in its litigation with NVIDIA[2]. *Id*. As a result, NAI spent five and half months—from when NAI served its subpoena on October 13, 2025, to April 27, 2026—to provide Amazon the information needed to conduct a search. Once Amazon had the information needed to start a search, it did so.

On May 21, 2026, Amazon shared its findings from Amazon's preliminary investigation: the accused computer chips were potentially used in many places across the company, and tracking down each one, how it was used, and how it was configured was not realistically possible. Byer Declaration of Benjamin J. Byer ("Byer Decl.") ¶ 3. Namely, asking a cloud provider to track down this information for many thousands of GPUs is akin to asking an automative company to track down every bolt and produce documents showing how each was used. *Id.* Amazon asked NAI whether NAI could narrow or focus the requests in any way. NAI refused and stated NAI would simply go to the court rather than meaningfully confer. *Id.* Amazon nonetheless agreed to look for ways to provide information about the volume of the accused products that were used in one of the three identified configurations. *Id.* NAI requested that Amazon provide a date certain for this production, but NAI did not request any other information. *Id.* Amazon explained that since NAI had only just provided the information needed to begin the search, Amazon could not yet commit to when it would be completed.

On June 1, 2026, rather than engage in any discussion, NAI simply sent Amazon a discovery dispute chart and demanded Amazon either respond to the chart or "confirm in writing by June 8 what categories of documents [Amazon] will agree to search for and produce. . . along with the timeline for completing that production." Dkt. 1-7, at 3. On June 4, 2026, Amazon responded that Amazon would agree to compete the reasonable search the parties had discussed and provide the results "three weeks from tomorrow" (i.e., June 26, 2026). In a final effort to look for a cooperative resolution, Amazon again requested a meet and confer. *Id.* at 2.

---

[2] NAI also dropped certain requests to which Amazon had objected. *Id*. Dropping improper requests, however, did not meaningfully narrow the subpoena.

On June 5, 2026, the parties conferred, and Amazon explained that based on a reasonable search Amazon did not have documents that provided company-wide visibility into the usage NAI sought, but offered as an alternative to conduct a search and compile into a spreadsheet data showing for each accused NVIDIA GPUs the volume configured in one of the three ways NAI identified as relevant. Byer Decl. ¶ 4. When Amazon asked NAI's counsel whether NAI felt Amazon should be doing anything more, "NAI was unable to identify anything it believed [Amazon] should be doing that it hadn't already agreed to do." Byer Decl., Ex. A, at 1. Although Amazon was "conducting the search [the parties] discussed—tracking down where, how, and in what volume the accused GPUs are used[,]" NAI refused to withdraw its discovery dispute chart. Byer Decl, Ex. A, at 2.

On June 17, 2026, the Court held a hearing for the discovery disputes NAI had with Dell, Microsoft, and Amazon, all of whom NAI had served with similar subpoenas. Dkt. 1-8. When addressing NAI's dispute with Dell, the Court stated that although some requests to Dell appeared to cover some relevant information, "the scope of . . . many of them is probably more broad than necessary" and that the requested discovery "could easily become disproportionate to the benefits that would be obtained from the information." Byer Decl., Ex. B (June 17, 2026 Tr. of Disc. H'rg ("Transcript") at 22:6-7; 23:3-5). It therefore ordered Dell and NAI to meet and confer on each request to more precisely define their dispute. Byer Decl., Ex. B (Transcript at 24:4-6).

At the hearing, Amazon's counsel explained it had agreed to produce by June 26 as the parties had discussed and confirmed Amazon's commitment to work with NAI if NAI felt something was missing. Byer Decl., Ex. B (Transcript at 34:10-35:22). The Court also agreed with Amazon that the discovery dispute statement was the improper mechanism to hear the dispute given Amazon's objection to it.

On Wednesday, June 24, 2026—two days before Amazon's agreed production—NAI filed this Motion. On June 26, 2026, Amazon made its agreed production. Byer Decl. ¶ 5. NAI has neither requested a meet and confer nor contacted Amazon stating that it believes something is missing from Amazon's production. Byer Decl. ¶ 6.

## III. ARGUMENT

NAI's Motion should be denied for two reasons. First, the underlying subpoena fails to identify a place of compliance that satisfies Rule 45's restriction. Second, NAI fails to present a ripe dispute for this Court.

### A. NAI Has Moved to Compel in The Wrong District.

Rule 45 permits a requesting party to set the place of compliance "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A). NAI does not argue Amazon.com, Inc. (the entity it subpoenaed) is a resident of Texas or that it is somehow employed there. NAI instead claims Amazon.com, Inc. "regularly transacts business" within 100 miles of Austin because Amazon generally has a corporate office and unrelated job postings in Austin. Rule 45 does not permit a requesting party to paint with such broad brush, forcing a non-party to produce documents at a location having no connection to the documents requested.

Under Rule 45, the relevant business activities are those tethered to the location "'[1] where the corporation is headquartered or [2] the ***custodian*** of records resides, is employed, or regularly transacts business in person.'" *Cleary v. Kaleida Health*, 2024 WL 1297708, at *3 (W.D.N.Y. 2024) (quoting 9 Moore's Federal Practice § 45.25[2] (Matthew Bender 3d ed.)); *Europlay Cap. Advisors, LLC v. Does*, 323 F.R.D. 628, 629 (C.D. Cal. 2018) (requiring that the subpoena have a place of compliance at the location where "custodians of records reside, are employed, and regularly transact business in person."). In other words, the question is not where an entity is somehow employed or regularly transacted business in person, but where the custodians of records are employed or regularly transacts business in person. *Europlay*, 323 F.R.D. at 629 (emphasis added) (analyzing whether the non-party's "***custodians of records*** reside, are employed, and regularly transact business in person"). This follows from a plain reading of Rule 45, as it makes no sense to consider an entity's employment or where it conducts business "in person."

As a result, courts have squarely rejected the argument that the existence of an office within a district makes that district a proper Rule 45 place of compliance. *Dellaportas v. Shahin*, 2025

WL 3019810, at *1–2 (S.D.N.Y. Oct. 29, 2025), *adhered to on reconsideration*, 2025 WL 3456400 (S.D.N.Y. Dec. 2, 2025) (finding that a motion to compel should be heard in the district where the "employees who would be responsible for searching and producing information responsive to Plaintiff's subpoena are."). NAI also suggests that a place of compliance is where a party has job postings. Mot. at 6 (citing Dkt. 1-5). This argument misses the point. NAI cites no evidence that any of those job postings are for Amazon.com, Inc. (the entity subpoenaed), much less evidence suggesting Amazon.com, Inc.'s custodians of relevant information are located in Texas. NAI has therefore failed to carry its burden to show it has satisfied Rule 45 or that its subpoena is enforceable in this District. *See Cruz v. AerSale, Inc.*, 2025 WL 1426884, at *4–6 (D.N.M. 2025) (denying motion to compel where the movant failed to establish the proper court of compliance).

**B. NAI Fails to Present a Ripe Dispute.**

NAI's discovery requests fall generally into two relevant buckets: (1) requests for information on the volume of accused NVIDIA GPUs configured in the relevant way (the "volume information"), and (2) requests for additional technical documents, internal emails, internal documents, and Amazon financial information. NAI's motion should be denied on both fronts. Amazon has already produced the volume information the parties discussed during the meet and confers. On the remaining requests, NAI has not conferred with Amazon on these requests, fails to satisfy its burden to show relevance, and fails to refute Amazon's objections.

**1. Amazon Has Already Produced the Volume Material the Parties Discussed.**

On June 5, 2026, Amazon explained that based on a reasonable search Amazon ***did not*** have responsive documents kept in the ordinary course of business that provided company wide data on the configurations NAI for which sought discovery. Byer Decl. ¶ 4. Nevertheless, Amazon agreed to go beyond its obligation under Rule 45 and search for and compile data to ***create*** a document that would identify the accused NVIDIA GPUs configured in the accused manner, and their volumes. Byer Decl., ¶ 4. During the parties' numerous conferrals, NAI never requested Amazon do anything else. *See* Byer Decl., Ex. A, at 2. On June 26, 2026, Amazon produced that

information. Byer Decl. ¶ 5. To the extent NAI believed additional information was called for, Amazon also offered to meet and confer with NAI to understand what, if anything, NAI contended was needed from Amazon to address NAI's technical requests (e.g., RFPs 5, 7, 8, 9, 10, and 19). To date, NAI has not identified any deficiency in Amazon's production of volume information or requested a meet and confer. Thus, Amazon has already gone beyond its duties under Rule 45 to create documents that it does not maintain in the ordinary course of business, and there is no pending dispute about the sufficiency of Amazon's production on the volume of accused NVIDIA GPU configured in one of the three allegedly relevant ways—the only issue on which the parties have conferred.

#### 2. NAI fails to Present Any Ripe Dispute on the Remaining Requests.

NAI's Motion also appears to request Amazon be compelled to provide additional, non-technical information. Although its Motion does not discuss such materials, RFP 12 requests "communications between [Amazon] and NVIDIA" relating to the accused NVIDIA products, RFP 13 requests Amazon's "internal documents" regarding the Accused Products, and RFP 14 seeks "revenue, usage, or subscription data" for Amazon services or software platforms related to the Accused Products. Dkt. 1-3, at 18–20. Amazon timely objected to these requests because, among other things, they sought information not relevant to either party's claims or defenses. Dkt. 1-5, at 17–20. To the extent NAI contends its motion covers such materials,[3] that portion of its Motion would fail for three reasons.

First, the parties have never conferred on Amazon's objections. The parties conferred over two periods of time. First, shortly after NAI served its subpoena, the parties discussed the information Amazon needed to begin searching, and NAI agreed to provide that. More than five months after serving the subpoena, NAI finally did so by identifying the relevant GPUs and the three configurations of those GPUs it claimed was relevant. Second, the parties reinitiated their

[3] NAI appears to have withdrawn its similar requests against Dell, so it is unclear whether NAI intends to pursue these request here, particularly since NAI's Motion makes no attempt to justify them. Byer Decl., Ex. C.

conferrals shortly after NAI's five-month delay. These discussions focused solely on the timing of Amazon producing a report showing the volume of accused GPUs configured in one of the accused ways. *See supra* § II.B. The parties never discussed requests for emails, financial information, non-technical documents, or any other topic in the nine RFPs NAI's Motion cites without discussion.

Local Rule CV-7(g) states that the Court "may refuse to hear or may deny a nondispositive motion unless the movant advises the court within the body of the motion that counsel for the parties have conferred in a good-faith attempt to resolve the matter by agreement and certifies the specific reason that no agreement could be made." Conferring in good faith "means that the parties must genuinely attempt to resolve the dispute without judicial intervention, and not to treat their negotiations simply as a formal prerequisite for judicial review." *Perkins v. United States Parcel Serv. of Am., Inc.*, 2024 WL 1493808, at *1–2 (W.D. Tex. 2024). Courts deny motions to compel for failing to meet and confer because they do not precisely present a dispute to the court. *Id.*; *see also Diaz v. Cuatro T Constr., Inc.,* 2021 WL 2709681, at *1 (W.D. Tex. 2021). Because the parties have *never* conferred on those other document requests, the portion of NAI's Motion addressing them should be denied.

Remarkably, NAI ignores this Court's directive on the very same issue during the June 17, 2026 hearing as it relates to NAI's subpoena to Dell. Byer Decl., Ex. B (Transcript at 24). Namely, the Court "order[ed] [Dell and NAI] to meet and confer to address what information—figure out what information is out there and what can be produced[.]" *Id.* at 23:7-9. NAI now skips the step the Court expressly ordered—a conferral "addressed discreetly to each request for production." Byer Decl., Ex. B. (Transcript at 24:8-9). It is unclear why NAI believes it can skip the same meet and confer requirement with Amazon. Indeed, during its meet and confer with Dell, NAI narrowed the scope of its requests to eliminate information it is still seeking here including emails and revenue data. Byer Decl, Ex. C, at 9–11. This highlights the policy behind the meet and confer requirement and the unnecessary burden NAI places on the Court by ignoring it.

Second, Amazon has specific objections to these requests as covering irrelevant information. For example, RFP 12 requests a broad set of communications that NAI has not demonstrated are relevant or proportional to the issues in this case. As Amazon stated in its objection, requests for email communications are particularly burdensome. Dkt 1-6, at 17–18; *Hedgeye Risk Mgmt., LLC v. Dale*, 2023 WL 4353076, at *2 (S.D.N.Y. 2023) (citation omitted) ("all . . . communications " that relate to multiple categories of records "is often a red flag for overbreadth and undue burden."); *Chinitz v. Realogy Holdings Corp.,* 2020 WL 6265083, at *3 (W.D. Tex. 2020) (similarly denying a motion to compel requests for "all communications" as "facially overbroad"). Indeed, even in party discovery, "[e]mail discovery is not presumptively relevant to [patent] litigation," and "'overbroad email production requests, carry staggering time and production costs that have a debilitating effect on litigation.'" *Hoist Fitness Sys., Inc. v. TuffStuff Fitness Int'l, Inc.*, 2019 WL 121195, at *3 (C.D. Cal. 2019) (quoting Introduction to Model Order Regarding E-Discovery in Patent Cases, at p. 2 (Fed. Cir. 2011)); *see also* Standing Order Governing Proceedings (OGP) 4.4-Patent Cases, at p. 3 (noting that "the Court will not require general search and production of email or other electronically stored information (ESI) related to email (such as metadata), absent a showing of good cause"). Amazon likewise objects that its internal documents and financial records not available in any hypothetical negotiation between NAI and NVIDIA have no relevance to the underlying lawsuit. *SPH Am., LLC v. AT&T Mobility, L.L.C.*, 2016 WL 11783677, at *2 (S.D. Cal. 2016) (denying motion to compel because the party failed to show any relevance as to the *Georgia-Pacific* factors). Indeed, although NAI seeks to compel the production of financial information here, NAI dropped its request for financial data during its conferrals with Dell. Byer Decl., Ex. C, at 10.

Third, NAI admits as the moving party it has the burden to establish "that the materials are relevant or will lead to the discovery of admissible evidence," Mot. at 7, but NAI has failed to carry it. *Hobbs v. Petroplex Pipe & Constr., Inc.*, 2018 WL 3603074, at *2 (W.D. Tex. 2018) (noting that the moving party has the burden to establish relevance). NAI provides a single sentence alleging that its requests are "directly relevant to proving how NVIDIA's accused GPU-

acceleration technology is deployed and used in real-world systems[,]" and "to proving how the accused products operate in commercial deployments and how Amazon's systems interact with NVIDIA's GPU-acceleration software—including CUDA, TensorRT, and PyTorch with CUDA." Mot. at 7. At most, this justifies its technical requests that Amazon has produced on. NAI is entirely silent about how internal email, internal documents, of Amazon's financial information would have any relevance.[4] NAI also suggests the Court already found all its requests to be relevant. Mot. at 8. But NAI cherry picks quotes while ignoring the Court's ultimate finding and order that the parties confer on the issues. Byer Decl., Ex. B (Transcript at 24). Because the Court did not rule on relevance, NAI cannot skirt its burden to show that relevance "discreetly to each request for production." *Id.*; *El Paso Disposal, LP v. Ecube Labs Co*., 2025 WL 1879607, at *3–6 (W.D. Tex. 2025) (denying a motion to compel because moving party made "conclusory arguments about relevance" without sufficient explanation or consideration for the burden on the non-party).

## IV. CONCLUSION

For the reasons stated above, the Court should deny NAI's Motion.

DATED this 1st day of July, 2026.

*/s/ Darryl J. Adams*

Darryl J. Adams (Texas Bar No. 00796101)
Slayden Grubert Beard PLLC
401 Congress Ave., Ste. 1650
Austin, TX 78701
Tel: 512.402.3562
Email: dadams@sgbfirm.com

*Attorney for Respondent Amazon.com, Inc.*

[4] Rule 45 "provides additional protections where a subpoena seeks trade secret or confidential commercial information from a nonparty," requiring a higher showing of "substantial need." *Vinton Steel, LLC. v. Com. Metals Co.*, 2023 WL 2518881, at *3 (W.D. Tex. 2023) (citation and internal quotation marks omitted). Amazon objected because NAI's requests asked for Amazon's confidential documents and trade secrets, Dkt. 1-6, at 5, 18–21, but NAI does not address its "substantial need" for the information.