# EXHIBIT 23

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| **NEURAL AI, LLC,**<br><br>**Petitioner,**<br><br>**v.**<br><br>**MICROSOFT CORPORATION,**<br><br>**Respondent.** | **Case No. 7:26-mc-00242**<br><br>**[Underlying Case: USDC Western District of Texas No. 7:24-cv-00221-ADA-DTG]** |

**NEURAL AI'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL COMPLIANCE WITH SUBPOENA SERVED ON THIRD-PARTY MICROSOFT CORPORATION**

## TABLE OF CONTENTS

A. FACTUAL BACKGROUND ....................................................................................1

1. The Underlying Litigation ....................................................................................1

2. The Rule 45 Subpoena to Microsoft and Microsoft's Initial Objections ............................2

3. NAI's Meet-and-Confer Efforts and Narrowing and Microsoft's Continued Non-Compliance ....................................................................................2

4. Procedural History ....................................................................................3

B. THE COURT HAS JURISDICTION OVER THIS DISPUTE BECAUSE THE PLACE OF COMPLIANCE IN AUSTIN IS PROPER. ..................................................4

C. MICROSOFT MUST PRODUCE DOCUMENTS RESPONSIVE TO THE SUBPOENA. ....................................................................................6

1. The subpoenaed materials are relevant and proportional to the needs of the case. .............7

2. Microsoft's burden objections are unsupported. ..................................................9

3. Microsoft cannot continue to defer production with vague promises...............................10

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*611 Carpenter LLC v. Atlantic Casualty Ins. Co.*,
2024 WL 1977160 (W.D. Tex. April 30, 2024) ....................7, 9

*Conservation L. Found., Inc. v. Equilon Enters. LLC*,
No. CV 17-396-WES, 2025 WL 2821238 (D.R.I. Oct. 3, 2025) ....................5

*Linet Americas, Inc. v. Hill-Rom Holdings, Inc.*,
No. 21-cv-6890, 2025 WL 889579 (N.D. Ill. Jan. 27, 2025)....................6

*Meritage Homes, LLC v. AIG Specialty Ins. Co.*,
No. 1:23-MC-00944-DII, 2024 WL 221448 (W.D. Tex. Jan. 18, 2024)....................4

*Philadelphia Indem. Ins. Co. v. Odessa Family YMCA*,
No. 7:20-CV-00134-DC, 2020 WL 6484069 (W.D. Tex. June 26, 2020) ....................4

*Trs. of Bos. Univ. v. Everlight Elecs. Co.*,
No. 12-CV-11935-PBS, 2014 WL 12792496 (D. Mass. Sept. 8, 2014)....................5, 6

*Velocity Pat. LLC v. FCA US LLC*,
No. 13 CV 8419, 2017 WL 11893112 (N.D. Ill. Nov. 2, 2017) ....................5

*Waller v. Jet Specialty, Inc.*,
No. 23-CV-00121-DC-RCG, 2024 WL 7050192 (W.D. Tex. Nov. 19, 2024) ....................7

## Rules

Federal Rule of Civil Procedure 26 ....................6, 7, 10

Federal Rule of Civil Proecdure 45 .................... *passim*

Despite eight months of good-faith efforts from petitioner Neural AI, LLC ("NAI") to negotiate with third-party subpoena recipient and respondent Microsoft Corporation ("Microsoft"), Microsoft still has not produced a single document in response to the subpoena NAI served on October 15, 2025. During that eight-month period, NAI sought discovery directly from the defendant in the underlying case NVIDIA Corporation ("NVIDIA"), used information learned from NVIDIA to try to guide Microsoft's search for responsive documents, provided additional explanation of the infringing technology, and ultimately narrowed its subpoena to only 9 priority requests for production. Still, Microsoft has not committed to producing a single document and instead only agreed generally to investigate the existence of possibly responsive documents and information. That sort of investigation is something that should have occurred months ago when Microsoft first received the subpoena. Its vague promises to search now—eight months after the subpoena was served and less than two months before fact discovery closes in the underlying case—is too little too late. NAI respectfully requests that the Court issue an order compelling Microsoft to comply with the Rule 45 subpoena NAI served on October 15 and requiring production of documents responsive to NAI's nine requests for production by a date certain prior to the close of fact discovery in the underlying case.

## A. FACTUAL BACKGROUND

### 1. The Underlying Litigation

The underlying action—*Neural AI, LLC v. NVIDIA Corporation* 7:24-cv-00221-ADA-DTG (W.D. Tex.)—involves claims of direct, indirect, and induced patent infringement by NVIDIA relating to U.S. Patent Nos. 8,648,867; RE49,461; and RE48,438 (the "Patents-in-Suit"). The Patents-in-Suit teach systems and methods for GPU-accelerated computing technology. NAI alleges that NVIDIA's hardware (i.e., its GPUs and servers) and software (i.e., NeMo, TensorRT, and cuDNN) infringe the Patents-in-Suit and that NAI encourages its customers to combine those

products in an infringing manner. Microsoft is one of NVIDIA's largest customers and a real-world integrator of the accused GPU-acceleration hardware and software. NAI has subpoenaed multiple of NVIDIA's customers seeking documents in their unique possession to support its allegations of indirect and induced infringement. NAI seeks production of those documents prior to August 11, 2026, the close of fact discovery in the underlying case.

### 2. The Rule 45 Subpoena to Microsoft and Microsoft's Initial Objections

NAI served its Rule 45 subpoena on Microsoft on October 15, 2026. NAI noticed the place of compliance at 100 Congress Avenue, Suite 2000, Austin, Texas 78701. *See* Portuguese Decl., Exhibit A at 6. NAI chose this place of compliance because Microsoft has a significant presence and conducts business in Austin, Texas. For example, Microsoft currently has 46 job listings for in-person roles at its Austin, Texas location. *See* Portuguese Decl., Exhibit B. The initial subpoena contained 20 requests relating to Microsoft's purchase, use, incorporation, sale, or development of products containing or depending on the accused NVIDIA hardware and software. Exhibit A. The requests were limited in time to the relevant damages period in the underlying case, from September 13, 2018 to the present, and limited in scope to U.S.-based or U.S.-directed activity. *Id.*

Microsoft served objections on November 13, 2025. *See* Portuguese Decl., Exhibit C. Microsoft objected to the place of compliance because it was more than 100 miles from Microsoft's headquarters in Seattle, Washington. *Id.* at 4. As to the substance of the requests, Microsoft refused to search for or produce documents responsive to any request for production. *See generally id.*

### 3. NAI's Meet-and-Confer Efforts and Narrowing and Microsoft's Continued Non-Compliance

The parties first met and conferred on November 19, 2025. At that time and Microsoft's request, NAI agreed to seek additional information from NVIDIA first. NVIDIA subsequently

produced documents and information confirming that Microsoft is a significant NVIDIA customer but containing gaps about how Microsoft actually used itself or bundled, configured, and sold the accused products to its customers.

Shortly after NAI had received documents confirming that Microsoft was a significant NVIDIA customer and partner, Neural AI re-engaged Microsoft on April 3, 2026, and the parties conferred again on April 13, 2026. On April 27, 2026, NAI substantially narrowed the subpoena to nine priority requests (Nos. 5, 7-10, 12-14, and 19). *See* Portuguese Decl., Exhibit D at 4-6. At the same time, NAI provided more detailed descriptions of the accused functionality and the type of bundling of NVIDIA hardware and software NAI is interested in and, to help Microsoft in its search for responsive information, identified the specific NVIDIA hardware products Microsoft had acquired during the relevant period. The parties met and conferred again on May 21 but, as of that meet and confer, Microsoft still had done little to no investigation into how it uses the NVIDIA products it purchased or what responsive documents it may have.

On June 4, 2026, Microsoft's counsel wrote by email that Microsoft was still "in the process of making our way through the orgs" and "figuring out whether and where they have the information." *See* Exhibit D at 1. But for the first time—over 7 months after Microsoft received the subpoena—Microsoft finally stated it "had the lay of the land" and would "complete a reasonable search and provide you with what we're able to find three weeks from tomorrow." *Id.* The parties conferred on June 5, at which time NAI learned that Microsoft's commitment to search for documents was illusory. Microsoft still did not know if the information it was compiling was "garbage or not" and could not commit that it would actually produce any responsive documents at the conclusion of its three-week search.

### 4. Procedural History

On June 1, 2026, while the parties were continuing to meet and confer, NAI sent Microsoft

a dispute chart pursuant to Section IV of the Court's March 5, 2025, Standing Order Governing Proceedings (OGP)—Patent Cases ("OGP"). Because Microsoft was a third party to the underlying dispute, NAI asked Microsoft to respond to the dispute chart in 7 days, rather than the 3 days contemplated in the OGP. On June 9, 2026, NAI sent an updated dispute chart taking into account the information Microsoft provided on the parties' most recent meet and confer. Microsoft completed its portion of the dispute chart on June 12, 2026. It objected to the dispute chart process and jurisdiction as threshold issues and on the merits.

NAI submitted the dispute chart to the Court on June 15, 2026. The Court held a hearing on the dispute chart on June 17, 2026. At the hearing, the Court instructed NAI to file a motion to compel, rather than use the dispute chart process. *See* Portuguese Decl., Exhibit E at 37:14-38:6.

**B. THE COURT HAS JURISDICTION OVER THIS DISPUTE BECAUSE THE PLACE OF COMPLIANCE IN AUSTIN IS PROPER.**

The District Court for the Western District of Texas is the proper court to resolve Neural AI's motion to compel because Rule 45 directs the serving party to seek an order compelling production in "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(2)(B)(i); *see also Meritage Homes, LLC v. AIG Specialty Ins. Co.*, No. 1:23-MC-00944-DII, 2024 WL 221448, at *4 (W.D. Tex. Jan. 18, 2024); *Philadelphia Indem. Ins. Co. v. Odessa Family YMCA*, No. 7:20-CV-00134-DC, 2020 WL 6484069, at *1 (W.D. Tex. June 26, 2020). The place of compliance for the subpoena at issue is Planet Depos – Downtown Austin c/o Lexitas Legal, 100 Congress Ave., Ste. 2000, Austin, Texas 78701, which is located within this District. This Court's jurisdiction, then, turns on whether the place of compliance listed in the subpoena is proper. *See* Exhibit E at 32:3-5 (Microsoft agrees with NAI that the analysis "boils down to whether the place of compliance is correct.").

For document subpoenas, Rule 45(c)(2)(A) permits production "at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." The issuing party is not limited to selecting a place of compliance only within 100 miles of the recipient's headquarters. *See, e.g.*, *Conservation L. Found., Inc. v. Equilon Enters. LLC*, No. CV 17-396-WES, 2025 WL 2821238, at *1 (D.R.I. Oct. 3, 2025) (rejecting argument that the place where an entity "regularly transactions business in person" is limited to the corporate headquarters because it "ignores the plain language of the Rule."). Rule 45 could have stated such a narrow requirement, but it did not. Instead, the Rule allows for a place of compliance within 100 miles of any location where the recipient transacts business in person. For a company like Microsoft that conducts significant business nationally, a party issuing a subpoena has many choices.

The place of compliance is not limited to a location where potential document custodians are located. First, such a rule is logically non-sensical because the party serving the subpoena cannot know where the custodians possessing relevant documents are located before serving the subpoena. Rule 45 cannot require that a party serving a subpoena on a large, nation-wide company play a guessing game with the compliance location and cross its fingers that the custodian with documents responsive to its subpoena is located near the place of compliance, rather than at a regional office across the country. Second, courts routinely reject this very argument. *See, e.g.*, *Velocity Pat. LLC v. FCA US LLC*, No. 13 CV 8419, 2017 WL 11893112, at *4 (N.D. Ill. Nov. 2, 2017) (holding that the place of compliance was proper within 100 miles of any of the subpoena target's regional offices or facilities and rejecting argument that, "regardless of its other locations," its headquarters was the "only location where it stores" requested documents); *Trs. of Bos. Univ. v. Everlight Elecs. Co.*, No. 12-CV-11935-PBS, 2014 WL 12792496, at *3 (D. Mass. Sept. 8, 2014) (holding that place of compliance in Boston was proper because Apple had two offices and

four retail locations in Massachusetts and rejecting Apple's argument that its headquarters and relevant documents are in Cupertino, California). "Rule 45(c) says nothing about the location of documents subpoenaed." *Trs. of Bos. Univ.*, 2014 WL 12792496, at *3.

Microsoft's argument that it can produce documents only within 100 miles of its Seattle, Washington headquarters makes even less sense given its role as one of "the largest cloud infrastructure providers in the country." Exhibit E at 36:11-15. Information stored on the cloud, rather than on local hard drives, can be accessed from anywhere, including by Microsoft's employees in the Austin location. Given recent technology advances, largely driven by Microsoft's own cloud business, it is a fiction that Microsoft would physically produce documents at the Austin address listed as the place of compliance; of course, Microsoft will send responsive documents to NAI electronically. But even if Microsoft had to produce physical documents, its Austin-based employees could access the documents remotely, print them out, and deliver them within the same city from Microsoft's Austin office to the place of compliance.

Here, the Austin place of compliance satisfies Rule 45(c)(2)(A). Microsoft regularly transacts business in person in Austin through its corporate office in the same city as the place of compliance. This corporate office location is not empty or dormant. Microsoft's own job postings reflected 46 open Austin positions as of June 23, 2026. *See* Exhibit B; *see also Linet Americas, Inc. v. Hill-Rom Holdings, Inc.*, No. 21-cv-6890, 2025 WL 889579, at *4 (N.D. Ill. Jan. 27, 2025) (relying on the subpoena recipient's job postings for positions in Chicago to find that a place of compliance within 100 miles of Chicago was proper). Because the subpoena's listed place of compliance in Austin is proper, this Court has jurisdiction to resolve this motion to compel.

**C. MICROSOFT MUST PRODUCE DOCUMENTS RESPONSIVE TO THE SUBPOENA.**

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery regarding

any nonprivileged matter that is relevant to the parties' claims or defenses and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Where, as here, a non-party refuses discovery in response to a validly issued subpoena, Federal Rule of Civil Procedure 45 provides the Court for the district where compliance is required with broad discretion to compel the production of documents and information from third parties. Fed. R. Civ. P. 45(d)(2)(B)(i); *Waller v. Jet Specialty, Inc.*, No. 23-CV-00121-DC-RCG, 2024 WL 7050192, at *1 (W.D. Tex. Nov. 19, 2024). Once a party moving to compel discovery establishes that the materials are relevant or will lead to the discovery of admissible evidence, the burden rests upon the nonparty resisting discovery to substantiate its objections. *611 Carpenter LLC v. Atlantic Casualty Ins. Co.*, 2024 WL 1977160, at *1 (W.D. Tex. April 30, 2024) (granting party's motion to compel non-party subpoena). The non-party "must state with specificity the objection and how it relates to the particular request being opposed, and not merely that it is overly broad and burdensome." *Id.*

**1. The subpoenaed materials are relevant and proportional to the needs of the case.**

Neural AI's narrowed requests seek documents that are directly relevant to proving how NVIDIA's accused GPU-acceleration technology is deployed and used in real-world systems. Microsoft is one of NVIDIA's most significant customers and a large-scale integrator of the accused hardware and software. Publicly available information on Microsoft's website indicate that Microsoft and NVIDIA have a deep partnership, collaborating to "enable[] more conversational AI solutions, further integrating hardware and software solutions and making AI more accessible and easier to use."[1] *See* Portuguese Decl., Exhibit F at 1.

The narrowed requests target nine specific categories of documents:

1 NVIDIA's confidential documents also demonstrate the close relationship between NVIDIA and Microsoft, but NAI cites only public documents to avoid the need for sealing.

- RFP 5 seeks documents sufficient to identify Microsoft's products or services that depend on the accused technology.
- RFPs 7, 8, 9 and 10 seek technical documents, source code, configuration files, development notes and other documents sufficient to show how Microsoft's products or services implement, incorporate, use, integrate, invoke, or interact with the accused NVIDIA products.
- RFP 12 seeks communications with NVIDIA relating to the setup, integration, customization, support, or use of the accused NVIDIA products.
- RFP 13 seeks Microsoft's internal documents or reports reflecting the benefits or business value derived from its use of the accused NVIDIA products.
- RFP 14 seeks the revenue, usage, or subscription data for Microsoft's products or services that relied on accused NVIDIA products.
- RFP 19 seeks internal engineering documentation sufficient to show the design, development, or operation of Microsoft's products that use, incorporate, or were developed in connection with accused NVIDIA products.

*See* Exhibit A. Each category is directly relevant to proving how the accused products operate in commercial deployments and how Microsoft's systems interact with NVIDIA's GPU-acceleration software—including CUDA, TensorRT, and PyTorch with CUDA. In fact, the Court already determined that these same requests are relevant in the context of a discovery dispute with Dell, another NVIDIA customer. *See* Exhibit E at 22:4-20 ("As I see these requests for production, I do believe that they are targeted to relevant information. . . . I believe the documents that identify and include that information, at least to an extent, are relevant to the underlying lawsuit. And that same thought permeates through all of these.").

These materials are also uniquely in Microsoft's possession. NVIDIA has already confirmed that it does not possess information about how its customers use its products. *See* Portuguese Decl., Exhibit G at 22:2-11. Internal integration materials, architecture documents, implementation artifacts, internal communications, and revenue and usage data showing real-world deployment of the accused technology exist only in Microsoft's files. Neural AI cannot obtain equivalent information from any other source.

The requests are proportional to the needs of the case. Neural AI has narrowed from a broader initial set to nine priority requests. Neural AI further narrowed the focus to three combinations of NVIDIA products: use of an NVIDIA GPU in combination with (1) an original, custom, or modified version of PyTorch using CUDA; (2) TensorRT; and (3) applications that utilize PyTorch with CUDA or TensorRT. *See* Exhibit D at 5. Meanwhile, the temporal scope (September 13, 2018 to present) tracks the relevant damages period, and the requests are limited to U.S.-based or -directed activity. Given the importance of the issues at stake and the amount in controversy in the underlying patent infringement action, the narrowed requests are proportional.

**2. Microsoft's burden objections are unsupported.**

To start, Microsoft's written objections to burden are inadequate because they do not "state with specificity" the burden Microsoft would face in producing responsive documents. *611 Carpenter LLC*, 2024 WL 1977160, at *1. The boilerplate objections, absent evidence of burden, do not show that the burden of complying with the subpoena is undue and cannot outweigh the relevance of the discovery sought.

Further, NAI has taken reasonable steps to minimize Microsoft's burden. NAI spent months pursuing information directly from NVIDIA to avoid the need to obtain the same from Microsoft. For example, NAI withdrew the initial RFP 1 ("Documents sufficient to identify all types of NVIDIA [hardware] purchased, acquired, or deployed by You.") because it obtained data regarding Microsoft's purchases from NVIDIA itself. Further, even for requests for documents only within Microsoft's possession, NAI prioritized its requests and agreed to narrow the subpoena to only 9 RFPs, most of which are requests only for documents "sufficient to show" the requested information. At the same time, NAI provided Microsoft with information that NAI thought would facilitate the investigation, including (1) a detailed explanation of the specific software and hardware combinations that NAI alleges infringes and (2) a list of the accused products Microsoft

purchased from NVIDIA during the relevant period so that Microsoft could search for information about those specific products. NAI also regularly offered that it was willing to discuss and work through any burden-related issues Microsoft encountered in its investigation, but to this day, Microsoft has never articulated a specific hardship in responding to the subpoena, as opposed to general allegations that the subpoena requests are too broad.

**3. Microsoft cannot continue to defer production with vague promises.**

As described above, NAI has been patient and cooperative with Microsoft. But the fact discovery deadline in the underlying case is now less than two months away. Microsoft's vague promise to look into the matter and search for undefined documents—made for the first time on June 4, 2026—is insufficient. NAI had no choice but to seek the Court's intervention. Given the upcoming discovery deadline, NAI suggests that the Court require Microsoft to begin producing documents within 7 days of the Court's order on this motion and to complete production by no later than Friday, July 24, 2026.

For the foregoing reasons, NAI respectfully requests that this Court (1) overrule Microsoft's place-of-compliance objections and hold that this Court has jurisdiction over this motion; (2) compel Microsoft to produce non-privileged documents responsive to Neural AI's nine priority subpoena requests—RFPs 5, 7-10, 12-14, and 19; (3) require Microsoft to begin rolling production within 7 days of the Court's order on this motion and to complete production by Friday, July 24, 2026; and (4) require Microsoft to serve a privilege log compliant with Fed. R. Civ. P. 45(e)(2) and 26(b)(5) for any responsive materials withheld on privilege or work-product grounds, concurrent with its final production.

Dated: June 24, 2026

Respectfully submitted,

*/s/ Mark Siegmund*
Mark D. Siegmund
Texas State Bar No. 24117055
CHERRY JOHNSON SIEGMUND JAMES PC
Bridgeview Center
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710
msiegmund@cjsjlaw.com

Max L. Tribble
Texas State Bar 20213950
Brian D. Melton
Texas State Bar 24010620
Rocco Magni
Texas State Bar 24092745
Samuel Drezdzon
Texas State Bar 24117374
SUSMAN GODFREY L.L.P.
1000 Louisiana
Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
mtribble@susmangodfrey.com
bmelton@susmangodfrey.com
rmagni@susmangodfrey.com
sdrezdzon@susmangodfrey.com

Tamar Lusztig
NY State Bar 5125174
Emily Portuguese
NY State Bar 5920327
One Manhattan West, 50th Floor
New York, NY 10001
tlusztig@susmangodfrey.com
eportuguese@susmangodfrey.com

Tanner Laiche
WA State Bar 60450
401 Union Street, Suite 3000

Seattle, WA 98101
tlaiche@susmangodfrey.com

Max Ciccarelli
Texas State Bar No. 00787242
CICCARELLI LAW FIRM LLC
100 N. 6th Street, Suite 502
Waco, Texas 76701
Max@CiccarelliLawFirm.com

*Attorneys for Petitioner Neural AI, LLC*

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that a true and correct copy of the foregoing document was served on all parties via electronic mail on this 24th day of June 2026.

*/s/ Mark D. Siegmund*
Mark D. Siegmund

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| NEURAL AI, LLC,<br><br>Petitioner,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>Respondent. | Case No. 7:26-mc-00242<br><br>[Underlying Case: USDC Western District of Texas No. 7:24-cv-00221-ADA-DTG] |

**MEMORANDUM IN RESPONSE TO PETITIONER'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA SERVED ON THIRD-PARTY MICROSOFT CORPORATION**

## I. INTRODUCTION

Neural AI, LLC's ("NAI") Motion should be denied because (1) the subpoena is invalid on its face, having a place of compliance in violation of Rule 45, and (2) it fails to present a ripe dispute before this Court on any of the requests. First, Rule 45 required NAI to set the place of compliance in the Western District of Washington, where Microsoft Corporation ("Microsoft") is headquartered and has the required information. Failing to do so makes the subpoena invalid on its face, and unenforceable. Second, NAI does not present a ripe dispute before this Court. Microsoft's initial objections stated that it needed additional information to conduct a search. On the parties' initial meet and confer, NAI did not dispute that and agreed to provide that information. After five months of silence, NAI provided that information on April 27, 2026. In the short period of time between then and when NAI first sought to compel Microsoft, the parties on multiple instances met and conferred and discussed Microsoft's production. Namely, based on a reasonable search, because Microsoft did not keep documents containing the information NAI sought, Microsoft offered to compile data and produce NAI a table identifying the approximate volumes of accused chips configured in the relevant ways. The parties' subsequent discussion focused solely on the timing of that production, not its adequacy. Microsoft has since made that production, thus mooting the only issues on which the parties have met and conferred. To the extent NAI

intends its Motion to cover any other request, it fails to carry its burden to establish relevance and fails to fulfill its obligation to meet and confer. Accordingly, Microsoft requests the Court deny NAI's Motion.

## II. FACTUAL BACKGROUND

### A. The Parties' Meet and Confers and Microsoft's Search.

On October 15, 2025, NAI served its subpoena containing 20 requests amounting to discovery akin to that which would be served on a party in patent litigation. Dkt. 1-3. For example, request 16 sought "Marketing, customer-facing, or internal communications describing or referencing Your reliance on NVIDIA GPU-Acceleration Software and NVIDIA GPU-Acceleration Hardware or toolkits for performance, scalability, or innovation" and request 12 sought "Communications between You and NVIDIA relating to the setup, integration, customization, support, or use of any NVIDIA GPU-Acceleration Software." *Id.* at 19–20. The subpoena set the place of compliance as Austin, Texas. *Id.* at 2. On November 13, 2025, Microsoft objected that NAI's requests were facially overly broad and unduly burdensome, sought irrelevant information, and importantly stated that Microsoft needed more information before it could even conduct a search. *See generally* Dkt. 1-5. Microsoft further objected "to the subpoena as improper because the demanded place of production is not within 100 miles of Redmond, Washington, where Microsoft resides and regularly transacts business in person." Dkt. 1-5, at 5.

On November 19, 2025, the parties met and conferred, and Microsoft "explained that we needed more information to conduct a search[,]" including at a minimum the identification of relevant products and the information NAI sought about those products that was unavailable from NVIDIA. Dkt. 1-6, at 9. NAI responded that it was "still pursuing discovery from defendant and were working to better identify the products it supplied to . . . that were relevant, as well as what [it] needed from [Microsoft] about those products that [it] couldn't get from defendant." *Id*. On April 3, 2026, NAI asked Microsoft for an update, including whether "Microsoft will search for and produce documents responsive to each of the subpoena requests." Dkt. 1-6, at 10. On April 6, 2026, Microsoft reminded NAI that it was awaiting the information NAI agreed to provide months.

*Id*. at 9 (Microsoft stating that "[w]hen we last spoke five months ago, we explained that we needed more information to conduct a search" and NAI "agreed to circle back with us once you had that information.").

On April 13, 2026, the parties again met and conferred, and Microsoft again reminded NAI's counsel what it had agreed to provide the previous November. Dkt. 1-6, at 6. On April 27, 2026, for the first time, NAI provided Microsoft with the listing of relevant products, and the configuration that it contended was relevant in its litigation with NVIDIA. *Id*. at 5–6.

On May 21, 2026, the parties met and conferred, and Microsoft shared its findings from its preliminary investigation: the accused computer chips were potentially used in many places across the company, and tracking down each one, how it was used, and how it was configured was not meaningfully possible. Declaration of Benjamin J. Byer ("Byer Decl.") ¶ 3. Namely, asking a cloud provider to track down many thousands of GPUs is akin to asking an automative company to track down every wrench and produce documents showing how each was used. Microsoft asked NAI whether it could narrow or focus its requests in any way. *Id*. It refused and stated it would simply go to the court rather than meaningfully confer. *Id.* Microsoft nonetheless agreed to look for ways to provide information about the approximate volume of the accused products that were used in one of the three identified configurations. *Id*. NAI requested it provide a date certain it would have this volume information, but did not request any other information. Microsoft explained that since NAI had only just provided the information needed to begin the search, Microsoft could not commit to when it would be completed.

### B. NAI Files a Discovery Dispute In the Underlying Case and Then Files This Motion.

On June 1, 2026, true to its word, rather than engage in any discussion, NAI simply sent Microsoft a discovery dispute chart and demanded Microsoft either respond to the chart or "confirm in writing by June 8 what categories of documents [it] will agree to search for and produce . . . along with the timeline for completing that production." Dkt. 1-6, at 2–3. On June 4, 2026, Microsoft responded that it would agree to compete the reasonable search the parties had

discussed and provide the results "three weeks from tomorrow [i.e., June 26, 2026]." *Id*. at 2. In a final effort to look for a cooperative resolution, Microsoft again requested a meet and confer. *Id*.

On June 5, 2026, the parties met and conferred, and Microsoft explained that based on a reasonable search it did not have documents that provided company-wide visibility into the usage NAI sought, but offered as an alternative to conduct a search and compile into a spreadsheet data showing for accused NVIDIA GPUs the approximate volume configured in one of the three confirmations NAI identified as relevant. Byer Decl. ¶ 4. When Microsoft asked NAI's counsel whether it felt Microsoft should be doing anything more, "NAI was unable to identify anything it believed [Microsoft] should be doing that it hadn't already agreed to do." Byer Decl., Ex. A, at 1. Although Microsoft was "conducting the search [the parties] discussed—tracking down where, how, and in what volume the accused GPUs are used[,]" NAI refused to withdraw its discovery dispute chart. Byer Decl., Ex. A, at 2.

On June 17, 2026, the Court held a hearing for the discovery disputes NAI had with Dell, Amazon, and Microsoft, all of whom NAI had served with similar subpoenas. Dkt. 1-7. When addressing NAI's dispute with Dell, the Court stated that "the scope of some of [the requests] – in many of them is probably more broad than necessary" and that the requested discovery "could easily become disproportionate to the benefits that would be obtained from the information." Byer Decl., Ex. B (June 17, 2026 Tr. of Disc. H'rg ("Transcript") at 22:6-7; 23:3-5). It therefore ordered Dell and NAI to meet and confer to more precisely define their dispute. Byer Decl., Ex. B (Transcript at 24:4-6).

At the hearing, Microsoft's counsel explained it had agreed to produce by June 26 as the parties had discussed and confirmed its commitment to work with NAI if it felt it had missed something. Byer Decl., Ex. B (Transcript at 34:10-35:22). The Court also agreed with Microsoft that the discovery dispute statement was the improper mechanism to hear the dispute given Microsoft's objection to it. On Wednesday, June 24, 2026—two days before Microsoft's agreed production—NAI filed this Motion. On June 26, 2026, Microsoft made its agreed production. Byer

Decl. ¶ 5. NAI has neither requested a meet and confer nor identified anything it believes is missing from Microsoft's production.

## III. ARGUMENT

NAI's Motion should be denied for two reasons. First, the underlying subpoena fails to identify a place of compliance that satisfies Rule 45's restriction. Second, it fails to present a ripe dispute for this Court.

### A. NAI Has Moved to Compel in The Wrong District.

Rule 45 permits a requesting party to set the place of compliance "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A). NAI does not argue Microsoft is a resident of Texas or that it is somehow employed there. It instead claims Microsoft "regularly transacts business" within 100 miles of Austin because it has a corporate office and unrelated job postings in Austin. Rule 45 does not permit a requesting party to paint with such broad brush, forcing a non-party to produce documents at a location having no connection to the documents requested.

Under Rule 45, the only relevant business activities are those tethered to the location of the nonparty's headquarters and the location where "***custodians*** of records reside, are employed, and regularly transact business in person." *Europlay Cap. Advisors, LLC v. Does*, 323 F.R.D. 628, 629 (C.D. Cal. 2018) (emphasis added) (motion to compel against Google to heard in the District where non-party was headquartered and custodians of records reside in that District); *see also Procaps S.A. v. Patheon Inc.*, 2015 WL 1722481, at *3 (S.D. Fla. 2015) ("Because [the non-party corporation] is headquartered in Parsippany, N.J., [the place of compliance] is the District of New Jersey."); *Burnett v. Wahlburgers Franchising LLC*, 2018 WL 10466827, at *2 (E.D.N.Y. 2018) (concluding that "the proper forum for the motion to compel would be in the district in California where the nonparty's headquarters are located, not where the files are to be produced."). Courts in Texas follow this rule. *In re Xiaomi Tech. Netherlands B.V.*, 2025 WL 3068736, at *12 (E.D. Tex. 2025) (following *Europlay*'s analysis and concluding that compliance was proper at the non-party's "principal place of business"). In other words, the question is not where an entity is

somehow employed or regularly transacted business in person, but where the custodians of records are employed or regularly transacted business in person. This follows from a plain reading of Rule 45, as it makes no sense to consider an entity's employment or where it conducts business "in person."

As a result, courts have squarely rejected the argument that the existence of a Microsoft office within a district makes that district a proper Rule 45 place of compliance, concluding instead that compliance for Microsoft must be set in "the Western District of Washington." *Dellaportas v. Shahin*, 2025 WL 3019810, at *1–2 (S.D.N.Y. Oct. 29, 2025), *adhered to on reconsideration,* 2025 WL 3456400 (S.D.N.Y. Dec. 2, 2025) (finding that a motion to compel against Microsoft should be heard in the district where the "employees who would be responsible for searching and producing information responsive to Plaintiff's subpoena are."). NAI argues that a place of compliance is where a party has job postings. Mot. at 6 (citing Dkt. 1-4). This argument misses the point. NAI cites no evidence that any of those job posting suggest custodians of relevant information are located in Texas. NAI has failed to carry its burden to show it has satisfied Rule 45 and its subpoena is enforceable in this District. *See Cruz v. AerSale, Inc.*, 2025 WL 1426884, at *4–6 (D.N.M. 2025) (denying motion to compel where the movant failed to establish the court of compliance).

### B. NAI Fails to Present a Ripe Dispute.

NAI's discovery requests fall generally into two buckets: (1) requests for technical information regarding Microsoft's use of the accused GPUs, and (2) requests for internal emails, internal documents, and Microsoft financial information. NAI's motion should be denied on both fronts. Microsoft has already produced the technical information the parties discussed during the meet and confers. On the remaining requests, NAI fails to satisfy its burden to show relevance, fails to refute Microsoft's objections, and the parties have never met and conferred on these requests.

### 1. Microsoft Has Already Produced the Sole Technical Material the Parties Discussed.

On June 5, 2026, Microsoft explained that based on a reasonable search it did not have responsive documents kept in the ordinary course of business that provided company wide data on the configurations NAI sought discovery on. Byer Decl. ¶ 4. But rather than stand on its objections, Microsoft agreed to satisfy NAI's technical requests by instead searching for and compiling data to create a document that would identify the accused NVIDIA GPUs used in the accused manner, and their relevant volumes. *Id*. NAI never requested Microsoft do anything else. Byer Decl., Ex. A, at 1. On June 26, 2026, Microsoft produced that information. Byer Decl. ¶ 5. To the extent NAI believed additional information was called for, Microsoft also offered to meet and confer with NAI to understand what, if anything, it contended it needed from Microsoft to address its technical requests (e.g., RFPs 5, 7, 8, 9, 10, and 19). NAI has neither identified any deficient in Microsoft's production, or requested a meet and confer. Byer Decl. ¶ 6. Although Microsoft remains willing to do so, any dispute falling from such a hypothetical future meet and confer falls outside a motion NAI strategically filed before Microsoft's production.

### 2. NAI fails to Present Any Ripe Dispute on the Remaining Requests.

NAI's Motion also appears to request Microsoft be compelled to provide additional, non-technical information. Although its motion does not discuss such materials, RFP 12 requests "communications between [Microsoft] and NVIDIA" relating to the accused NVIDIA products, RFP 13 requests Microsoft's "[i]nternal documents" regarding the Accused Products, and RFP 14 seeks "[r]evenue, usage, or subscription data" for Microsoft services or software platforms related to the Accused Products. Dkt. 1-3, at 18–20. Microsoft timely objected to these requests because, among other things, they sought information not relevant to either party's claims or defenses. Dkt. 1-5, at 19-20. To the extent NAI contends its motion covers such materials,[1] that portion of its Motion would fail for three reasons.

---

[1] NAI appears to have withdrawn its similar requests against Dell, so it is unclear whether it intends to pursue these requests here, particularly since its Motion does not acknowledge they exist, much less make any attempt to justify them. Byer Decl., Ex. C.

First, Microsoft has specific objections to these requests as covering irrelevant information. For example, RFP 12 requests a broad set of communications that NAI has not demonstrated are relevant or proportional to the issues in this case. As Microsoft stated in its objection, requests for email communications are particularly burdensome. Dkt 1-5, at 18-19; *Hedgeye Risk Mgmt., LLC v. Dale*, 2023 WL 4353076, at *2 (S.D.N.Y. 2023) ("all . . . communications" that relate to multiple categories of records "often is a red flag for overbreadth and undue burden." (citation omitted)); *Chinitz v. Realogy Holdings Corp.*, 2020 WL 6265083, at *3 (W.D. Tex. 2020) (similarly denying a motion to compel requests for "all communications" as "facially overbroad"). Indeed, even in party discovery, "[e]mail discovery is not presumptively relevant to [patent] litigation," and "'overbroad email production requests, carry staggering time and production costs that have a debilitating effect on litigation.'" *Hoist Fitness Sys., Inc. v. TuffStuff Fitness Int'l, Inc.*, 2019 WL 121195, at *3 (C.D. Cal. 2019) (quoting Introduction to Model Order Regarding E-Discovery in Patent Cases at p. 2 (Fed. Cir. 2011)); *see also* Standing Order Governing Proceedings (OGP) 4.4-Patent Cases, p. 3 (noting that "the Court will not require general search and production of email or other electronically stored information (ESI) related to email (such as metadata), absent a showing of good cause."). Microsoft likewise objects that its internal documents and financial records that would post-date any hypothetical negotiation of a royalty between NAI and NVIDIA have no relevance to the underlying lawsuit. *SPH Am., LLC v. AT&T Mobility, L.L.C.*, 2016 WL 11783677, at *2 (S.D. Cal. 2016) (denying motion to compel because the party failed to show any relevance as to the *Georgia-Pacific* factors).

Second, the parties have never met and conferred on Microsoft's objections. All of the parties meet and confers focused solely on the timing of Microsoft producing a report showing the approximate volume of accused GPUs configured in the accused way. *See supra* § II.B. Local Rule CV-7(g) states that the Court "may refuse to hear or may deny a nondispositive motion unless the movant advises the court within the body of the motion that counsel for the parties have conferred in a good-faith attempt to resolve the matter by agreement and certifies the specific reason that no agreement could be made." Conferring in good faith "means that the parties must genuinely

attempt to resolve the dispute without judicial intervention, and not to treat their negotiations simply as a formal prerequisite for judicial review." *Perkins v. United States Parcel Serv. of Am., Inc*., 2024 WL 1493808, at *1–2 (W.D. Tex. 2024) (citation omitted). Courts deny motions to compel for failing to meet and confer because they do not precisely present a dispute to the court. *Id.*; *see also Diaz v. Cuatro T Constr., Inc.*, 2021 WL 2709681, at *1 n.1 (W.D. Tex. 2021). Because the parties have *never* conferred on those other document requests, the portion of NAI's Motion addressing them should be denied.

Third, NAI admits as the moving party it has the burden to establish "that the materials are relevant or will lead to the discovery of admissible evidence," Mot. at 7, but it has failed to carry its burden. *Hobbs v. Petroplex Pipe & Constr., Inc*., 2018 WL 3603074, at *2 (W.D. Tex. 2018) (noting that the moving party has the burden to establish relevance). NAI's sole relevance argument is a single sentence alleging that its requests are "directly relevant to proving how NVIDIA's accused GPU-acceleration technology is deployed and used in real-world systems[,]" and "to proving how the accused products operate in commercial deployments and how Microsoft's systems interact with NVIDIA's GPU-acceleration software—including CUDA, TensorRT, and PyTorch with CUDA." Mot. at 7. At most, this justifies its technical requests that Microsoft has produced on. NAI is entirely silent about how internal email, internal documents, of Microsoft's financial information would have any relevance.[2] Although NAI cites the RFPs that encompass those documents, it does not identify what they cover or make any effort to carry its burden to establish relevance. To the extent NAI intends to move on requests encompassing internal documents, email, and financial information, this portion of its motion should also be denied. *El Paso Disposal, LP v. Ecube Labs Co*., 2025 WL 1879607, at *3–6 (W.D. Tex. 2025)

[2] Rule 45 "provides additional protections where a subpoena seeks trade secret or confidential commercial information from a nonparty," requiring a higher showing of "substantial need." *Vinton Steel, LLC. v. Com. Metals Co.*, 2023 WL 2518881, at *3 (W.D. Tex. 2023) (citation and internal quotation marks omitted). Microsoft objected because NAI's requests asked for Microsoft's confidential documents and trade secrets, Dkt. 1-5, at 5, 18–21, but NAI does not address its "substantial need" for the information.

(denying a motion to compel because moving party made "conclusory arguments about relevance" without sufficient explanation or consideration for the burden on the non-party).

## IV. CONCLUSION

For the reasons stated above, the Court should deny NAI's Motion.

DATED this 1st day of July, 2026.

Davis Wright Tremaine LLP
Attorneys for Microsoft Corporation

By: /s/ Andrew T. Gorham
Andrew Thompson ("Tom") Gorham
State Bar No. 24012715
GILLAM & SMITH, L.L.P.
7232 Crosswater Avenue
Tyler, Texas 75703
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: tom@gillamsmithlaw.com

Ben Byer (*pro hac vice forthcoming*)
WSBA # 38206
Angelo Marchesini (*pro hac vice forthcoming*)
WSBA # 57051

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on this the 1st day of July, 2026 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Andrew T. Gorham*